373 So.2d 802 (1979)
CITY OF JACKSON and Mississippi Publishers Corporation
v.
CAPITAL REPORTER PUBLISHING COMPANY, INCORPORATED.
No. 51052.
Supreme Court of Mississippi.
July 25, 1979.
Brunini, Grantham, Grower & Hewes, W. Timothy Jones, Edmund L. Brunini, John E. Stone, R. David Kaufman, Howard C. Ross, Jr., Jackson, for appellant.
Jean D. Muirhead, W.E. Gore, Jr., Robert G. Nichols, Jr., Jackson, for appellee.
EN BANC.

ON PETITION FOR REHEARING
ROBERTSON, Presiding Justice, for the Court:
In its Petition for Rehearing, the Capital Reporter Publishing Company, Inc., called attention to the fact that the records in the Secretary of State's Office were in error in showing that the Capital Reporter was suspended from performing any right acquired by it by virtue of its being a corporation (a creature of statute), from August 9, 1977 to January 23, 1979, a period of more than *803 twelve months. Capital Reporter stated in its Petition that it was suspended as a corporation only from August 9, 1977 to August 17, 1977, and attached the affidavit of William A. Barnes, director of the revenue department of Mississippi State Tax Commission, wherein Barnes stated that the delinquent franchise tax was paid and credited to the Reporter's account on August 17, 1977, that the Reporter should have been reinstated on that date, but that, due to an error in its processing procedure, the Tax Commission inadvertently failed to cancel the suspension and notify the Secretary of State of the cancellation and the restoration of the Reporter to fill corporate status.
Inasmuch as our opinion of March 28, 1979, reversing the judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, in favor of the Reporter, and rendering judgment in favor of the City of Jackson and Mississippi Publishers Corporation, was based solely on the erroneous record in the Secretary of State's office showing the suspension of Capital Reporter for more than 12 months, the Petition for Rehearing is granted, the original opinion withdrawn, and the following opinion substituted therefor:
Appellants, the City of Jackson and the Mississippi Publishers Corporation, appeal from an order of the Circuit Court of the First Judicial District of Hinds County, Mississippi, which reversed an order of the City Council of the City of Jackson awarding the contract for the publication of the City's legal notices, advertisements and ordinances for 1978 to Mississippi Publishers Corporation d/b/a Jackson Daily News and The Clarion Ledger, and entered judgment awarding said contract to Capital Reporter Publishing Company, Inc., d/b/a The Capital Reporter.
The circuit court acted as an appellate court under this pertinent provision of Mississippi Code Annotated section 11-51-75 (1972):
"[T]he court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, ..." (Emphasis added).
The Record in this case consisted of a Corrected Bill of Exceptions, approved and signed by the Mayor of the City of Jackson. The interrelated statutes, Mississippi Code Annotated section 13-3-31 (1978 Supp.) (detailing the tests to be applied to determine whether a newspaper is qualified), and section 21-39-3 (1972) (setting forth the procedure to be followed by municipalities), apply in this case. Section 13-3-31 provides in part:
"(1) Whenever it is required by law that any summons, order, citation, advertisement or other legal notice shall be published in a newspaper in this state, it shall mean, in addition to any other requirements imposed by law, publication in some newspaper which:
"(a) Maintains a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required. The term "general circulation" means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers. ...
.....
"(d) Has been established and published continuously for at least twelve (12) months next prior to the first publication of such matter to be published, is regularly issued at stated intervals no less frequently than once a week, ..." (Emphasis added).
Section 21-39-3 provides:
"In municipalities in which there is more than one newspaper qualified to publish legal notices, the governing authorities of such municipality shall enter into a contract for the publication of its proceedings, ordinances, resolutions, and other notices required to be published only after inviting competitive bids from such newspapers. Such contracts shall be *804 let to the lowest bidder among them for a period of not more than twelve months from the date of such contract. It shall not be necessary, however, that the governing authorities of such municipality advertise its intention to accept such competitive bids but it shall be sufficient if notice thereof in writing be given to all of such newspapers by mail or delivery at least five days prior to the date on which said bids will be received, which said notice shall specify the date on which such bids will be received." (Emphasis added).
On November 29, 1977, the newly elected Jackson City Council entered an order authorizing and directing the City Clerk to issue an invitation for bids for legal publications, as required by section 21-39-3. The "Notice to Newspaper Publishers" closed with this sentence:
"Award will be made to the lowest and best bidder with a general circulation as defined by law, but the City reserves the full right to reject any or all bids."
The Clarion Ledger, the Jackson Daily News, The Capital Reporter, and "Steppin' Out" submitted bids which were opened at 3:30 P.M., December 14, 1977, in accordance with the notice. "Steppin' Out" was the low bidder, The Capital Reporter was next, and Mississippi Publishers Corporation doing business as The Clarion Ledger and Jackson Daily News, was next with the same bid for both of its daily newspapers.
On December 20, 1977, the City attorney, at the instance of the City Council, wrote each of the four publishers submitting bids, requesting them to furnish the Council with the information required by section 13-3-31. The Clarion Ledger and Jackson Daily News submitted the information required and advised the City Council that the data submitted had been audited by an independent newspaper circulation auditing agency. The Capital Reporter submitted unaudited information through its editor, Wilson F. Minor. According to the Corrected Bill of Exceptions, the City Council continued the matter of awarding bids for its legal publications until January 10, 1978. The Corrected Bill of Exceptions states that Commissioner Cochran talked with Editor Minor as to how the previous administration had awarded bids for legal publications. Upon being advised by Mr. Minor that publications had been divided equally between The Clarion Ledger, Jackson Daily News, and The Capital Reporter, each receiving 1/3rd, the City Council entered this order on January 10, 1978:
"ORDER ACCEPTING BIDS OF JACKSON DAILY NEWS, CLARION-LEDGER AND THE REPORTER FOR LEGAL PUBLICATIONS.
"IT IS HEREBY ORDERED by the Council of the City of Jackson that the bids of The Jackson Daily News and the Clarion-Ledger for 6¢ per word for the first publication and 3¢ per word for each subsequent publication, plus $1.00 for each proof of publication and the bid of The Capital Reporter for 4.999¢ per word for the first publication, 2.999¢ per word for the second publication, 2¢ per word for the third publication and 1¢ per word for the fourth publication, plus $1.00 for each proof of publication, be and the same are hereby accepted for publications of ordinances, resolutions, notices and other legal publications which are authorized by the Council and/or matters the City, by its council has direct jurisdiction over for the year 1978 as needed and designated by the Legal Department and the City Clerk.
"The said publications are to be divided equally between the three papers based on the number of words and a by-line referring to each paper inserted at the end of each publication."
Deciding to appeal from this Order, The Capital Reporter on January 18, 1978, presented to the Mayor of the City of Jackson a proposed Bill of Exceptions and then an Amended Bill of Exceptions. The Mayor found the proposed Bill of Exceptions and Amended Bill of Exceptions incomplete, inaccurate and insufficient, and prepared, signed and filed a Corrected Bill of Exceptions which was accepted by the Court as the record in this case.
*805 Subsequent proceedings of the City Council were then stated in the Corrected Bill of Exceptions:
"13. Because of the City Council's continuing concern over probable lack of qualification under the law of the Capital Reporter to publish the City's legal notices, and its concern over the legality of its aforesaid Order of January 10, 1978, the City Council subsequently reconsidered the propriety and legality of its aforesaid Order of January 10, 1978 and, in this connection, fully and independently considered whether or not the Capital Reporter was a newspaper qualified to publish legal notices under Sections 21-39-3 and 13-3-31, Mississippi Code of 1972. More specifically, at its regular meeting on January 24, 1978, the City Council took this issue under consideration and determined by Order (City Minute Book 3-M, page 466) that the Capital Reporter was not so qualified and therefore, by said Order, rescinded the prior Order of January 10, 1978 (City Minute Book 3-M, page 428), as follows:
"ORDER RESCINDING THAT CERTAIN ORDER OF JANUARY 10, 1978, RECORDED IN MINUTE BOOK 3 "M", AT PAGE 428, ACCEPTING BIDS OF JACKSON DAILY NEWS, CLARION-LEDGER AND THE REPORTER FOR LEGAL PUBLICATIONS.
"This day this cause came on for hearing and it appearing to the Council that the members of the Council have heretofore and since January 10, 1978, requested of the City Attorney an opinion in writing as to whether or not The Reporter is a newspaper qualified to publish legal notices under Sections 21-39-3 and 13-3-31, Mississippi Code of 1972; and the City Attorney having furnished the Council a written opinion in which he held that The Reporter was not so qualified; and the Council having also independently considered this matter and being desirous of complying with the law in all matters,
"IT IS, THEREFORE, HEREBY ORDERED that the Order of January 10, 1978, recorded in Minute Book 3 "M", at page 428, accepting the bids of the Jackson Daily News, Clarion-Ledger and The Reporter, for legal publications, is hereby rescinded, revoked and repealed." (City Minute Book 3-M, page 466, dated January 24, 1978).
"14. The City Council predicated and based its aforesaid Order of January 24, 1978 on the following facts, in the context of the requirements of Sections 13-3-31 and 21-39-3, Mississippi Code of 1972:
(a) The stated circulation/distribution information submitted to the City Council by the Capital Reporter in support of its bid (set out at pages 75-79 of this Corrected Bill of Exceptions) which shows, among other things:
(1) The Reporter's affidavit (page 76 of this Corrected Bill of Exceptions) states that at December 1, 1977, it had a paid circulation of 4,901 in the combined area of Hinds County and the City of Jackson, as compared to the population of the City of Jackson of 210,000, more or less, of which the City Council takes judicial notice.
(2) In its circulation/distribution affidavit (page 76 above) the Reporter states a breakdown of its stated distribution by mail subscriptions and rack sales within various stated ZIP code zones within the City of Jackson at December 1, 1977. This information shows that the substantial majority of the Reporter's stated paid distribution within the City of Jackson is concentrated in and limited to Northeast Jackson. In this connection, the City Council takes judicial notice of the ZIP Code zones within the City of Jackson, a matter of public, common knowledge.
(3) The Reporter's affidavit dated December 30, 1977 (page 76 above) also states that at December 1, 1977, 3,050 out of the 4,901 paid subscriptions in the combined area of Hinds County and the City of Jackson went to mail subscribers, but in the information submitted to the City Council by the Reporter by letter dated December 13, 1977 (pages 74-75 above), *806 the Reporter stated its total mail subscriptions `inside Jackson' at December 1, 1977 to be 3,100. The Reporter's circulation figures are unaudited.
(4) In its affidavit of December 30, 1977 (page 76 above), the Reporter states that at December 1, 1977, the Reporter was circulated to 4,901 paying subscribers within the combined area of Hinds County and the City of Jackson, but in its statement submitted by its letter of December 13, 1977 (page 75 above), the Reporter states that at December 1, 1977, the Reporter was circulated to 5,050 paying subscribers inside the City of Jackson."
.....
"15. Based on the foregoing facts, and in order to insure that effective general notice to the citizens of Jackson be given as required by law and the interest of the public, the City Council on January 24, 1978 determined and decided that the Capital Reporter was not qualified under Section 13-3-31 and hence not qualified under Section 21-39-3, Mississippi Code of 1972, to publish legal notices of the City of Jackson and that the Order of January 10, 1978 awarding a portion of the bid to the Capital Reporter was null and void. Hence the City Council entered the aforesaid Order of January 24, 1978 (Minute Book 3-M, page 466) rescinding the prior, aforesaid Order of January 10, 1978 (Minute Book 3-M, page 428).
"16. Subsequently, and during the regular meeting of January 24, 1978, the City Council determined that both the Clarion-Ledger and the Jackson Daily News were qualified to publish the legal notices of the City of Jackson under Sections 13-3-31 and 21-39-3, Mississippi Code of 1972, based on the independently audited circulation/distribution information and maps submitted by said newspapers in support of their bids which is set out at pages 6-39 (Clarion-Ledger) and at pages 39-73 (Jackson Daily News) of this Corrected Bill of Exceptions and in the Exhibit Volume thereto. Further noting that the Clarion-Ledger, a daily morning paper, and the Jackson Daily News, a daily evening paper, submitted identical bids and that both said newspapers are published at the same location and under the same ownership, and that their identical bids were equally low and collectively constituted the lowest acceptable bid, the City Council on January 24, 1978 ordered as follows (City Minute Book 3-M, page 466):
"ORDER ACCEPTING THE BIDS OF JACKSON DAILY NEWS AND CLARION-LEDGER FOR LEGAL PUBLICATIONS.
"This day this cause coming on for hearing and the Council having heretofore found that the bid of The Reporter is not an acceptable bid, and that the order awarding a portion of the bid to The Reporter was null and void; and the Council finding herein that the bids of the Jackson Daily News and Clarion-Ledger are the best and lowest bids offered by qualified newspapers under Sections 21-39-3 and 13-3-31, Mississippi Code of 1972; and the Council further finding that the Jackson Daily News and Clarion-Ledger submitted identical bids and both newspapers being published at the same location, and under the same ownership; and the Council being of the opinion that the publishing of legal citations and other legal publications should be awarded to the aforesaid newspapers, at their identical bids of 6¢ per word for the first publication, and 3¢ per word for each subsequent publication of legal citations and other legal publications, plus $1.00 for each proof of such publication;
"IT IS, THEREFORE, HEREBY ORDERED that the legal publications of the City of Jackson for the next twelve months is hereby awarded to the Jackson Daily News and Clarion-Ledger on the basis of the aforesaid bids submitted by these two newspapers."
The Circuit Court reversed the January 24, 1978, Order of the City Council, being of the opinion that the Order of January 10, 1978, awarding the contract to the three *807 papers, of necessity included a finding that all three were qualified within the meaning of the statute; that the action of the Council on January 24, 1978, "withdrawing the awarding of the business to the Reporter was arbitrary, capricious, illegal and without basis;" and finally, "that the valid portions can be separated from the invalid portions and thus the acceptance of the Reporter's bid was valid and those portions of the January 10 ordinance accepting the bids of the Clarion Ledger and Daily News and directing a division of the publications were invalid and void."
The Record (Corrected Bill of Exceptions) does not bear out nor support the judgment of the circuit court reversing the order of the City Council and awarding the entire publication contract to the Capital Reporter.
In Thornton v. Wayne County Election Commission, 272 So.2d 298 (Miss. 1973), this Court said:
"On appeal to the circuit court the case is not heard de novo. Testimony is not admissible unless the board itself is charged with fraud... .
"We have repeatedly held that an appeal from a board of supervisors or city by a bill of exceptions, as is provided by Section 1195, Mississippi Code 1942 Annotated (Supp. 1972), is an appeal to an appellate court and the circuit court is bound by the record made before the board. See Stewart v. City of Pascagoula, 206 So.2d 325 (Miss. 1968)." 272 So.2d at 301-02.
In Currie v. Ryan, 243 So.2d 48 (Miss. 1971), we set forth the tests to be applied by an appellate court to the actions of municipal authorities:
"Whatever may be the personal opinion of the judges of an appeal court on zoning, the court cannot substitute its own judgment as to the wisdom or soundness of the municipality's action. Moore v. Madison County Bd. of Supervisors, 227 So.2d 862 (Miss. 1969). The scope of a reviewing court is limited. The order of the governing body of a municipality may not be set aside if its validity is fairly debatable, and such order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, discriminatory or is illegal or without substantial evidential basis. Sanderson v. City of Hattiesburg, 249 Miss. 656, 163 So.2d 739 (1964).
"... The City Council could have decided the question either way. The question was clearly one for the City Council... ." 243 So.2d at 51-52. (Emphasis added).
In Klyce v. Alcorn County, 192 Miss. 440, 6 So.2d 298 (1942), this Court said:
"It may be that if a so-called newspaper offering a bid has such a small circulation that to publish therein would be of no substantial service to the county at large, or if its circulation is confined to some small area or community, or particular group of persons therein, or if its plant, equipment, and personnel are wholly inadequate to the undertaking, the board would, upon a finding of fact or facts to that effect, be authorized to lay aside that bid as not being by a newspaper of the character contemplated by the statute... ." 192 Miss. at 446, 6 So.2d at 300.
Sections 13-3-31 and 21-39-3 are interrelated and must be read together. The municipal authorities can not let a contract to publish legal notices to a newspaper not qualified under the law (section 13-3-31) whether it is the lowest bidder or not.
The order of January 10, 1978, dividing the publication of legal notices equally among The Capital Reporter, The Clarion Ledger and Jackson Daily News was completely null and void, its parts were interdependent and not separable and the City Council was correct in setting it aside. See City of Grenada v. Wood, 81 Miss. 308, 33 So. 173 (1902).
The validity of the Order of January 24, 1978, being fairly debatable and not being shown to be arbitrary, capricious, discriminatory, illegal or without substantial basis (Currie v. Ryan, supra), the circuit court was in error in setting aside the January 24, *808 1978, order of the City Council awarding the contract for its legal publications to The Clarion Ledger and Jackson Daily News, and also in attempting to amend the void January 10, 1978, Order so as to award the entire publications contract to the Capital Reporter.
The order of the circuit court is, therefore, reversed and the order of the city council of January 24, 1978, is reinstated.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM and COFER, JJ., concur.
LEE and BOWLING, JJ., take no part.