## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-CA-00203-SCT

*HUEY STOCKSTILL, INC. AND HUTCHINSON*
*ISLAND MINING CORPORATION*

*v.*

*ANTHONY HALES, CHARLES RAY PERRY,*
*LUTHER LADNER AND THOMAS F. "SNUFFY"*
*SPIERS, INDIVIDUALLY AND IN THEIR*
*RESPECTIVE CAPACITY AS MEMBERS OF THE*
*BOARD OF SUPERVISORS OF PEARL RIVER*
*COUNTY, MISSISSIPPI, A BODY POLITIC; AND*
*COLUMBIA WELDING AND CONSTRUCTION, INC.,*
*A MISSISSIPPI CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/6/97 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | STANLEY F. STATER, III |
| ATTORNEYS FOR APPELLEES: | LAWRENCE C. GUNN, JR. |
| | SAMUEL C. KELLY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 8/13/98 |
| MOTION FOR REHEARING FILED: | 8/27/98 |
| MANDATE ISSUED: | |

### EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. This appeal represents a county bid purchase matter in connection with a bridge reconstruction project. We conclude that the county board of supervisors correctly balanced its responsibilities under the bid law and those under the law regarding ethics and conflicts of interest. The circuit court correctly ruled that the Board's *nunc pro tunc* amendment was proper and that it related back to the date of the Board's original meeting. The circuit court also properly found that the actions of the Board were not arbitrary and capricious. Accordingly, we affirm.

### I.

¶2. The facts of this case are largely undisputed. In March of 1996 the Pearl River County Board of Supervisors (Board) advertised for bids to be submitted on a project to reconstruct the George Ford Road Bridge. Eight bids were submitted, including that of the plaintiff, Huey Stockstill, Inc. (Stockstill) and defendant Columbia Welding and Construction, Inc. (Columbia).

¶3. At the time the bids were submitted, a former Pearl River County Supervisor, Thomas Pearson, was employed by Stockstill as a bid estimator, and had assisted in preparing Stockstill's bridge bid. Pearson's term as supervisor had expired on January 2, 1996, and therefore he had been out of office for less than a year when the bid was prepared and when it was submitted. Wary of possible conflicts of interest, the Board requested an opinion from the Mississippi Ethics Commission (Commission) regarding the propriety of accepting Stockstill's bid in the event that it was the lowest bidder. On April 5, 1996, the Commission rendered a written opinion. Citing Miss. Const. art. 4, § 109 and Miss. Code Ann. § 25-4-105(2) (1991), the Commission stated that a former county supervisor, as an employee of a corporation, has a prohibited interest in all contracts with the corporation authorized by the county during his term and for one year thereafter.[1]

¶4. The bids were opened on April 15, 1996. Stockstill submitted the lowest bid, at $1,070,316.90; Columbia submitted the second lowest bid, at $1,082,242.95. On April 17, 1996, Stockstill shifted Pearson's employment to a separate company, Custom Aggregates & Grinding, Inc. (Custom Aggregates). The stock of Custom Aggregates is wholly owned by Huey Stockstill, Sr. Huey Stockstill, Inc. and Custom Aggregates share the same office space and mailing address, have common officers and directors, and Stockstill provides "administrative services" to Custom Aggregates. Mr. Pearson continued to work as a bid estimator after his change of employment.

¶5. In a hand-delivered letter dated April 17, 1996, Stockstill informed the attorney for the Board that Pearson was no longer employed by Stockstill. In response to this new circumstance, attorneys for the Board requested a second opinion from the Ethics Commission. In the meantime, Columbia formally advised the Board of its position that any award of the contract to Stockstill would violate the constitutional and statutory conflict of interest provisions, and that any contract made in violation of these provisions would be null and void. The Board took all bids under advisement pending the result of its latest query to the Commission.

¶6. On May 3, 1996, the Commission rendered its second opinion. It stated that whether or not the relation between the two companies was sufficient to cause the former supervisor to have a direct or indirect interest would require review by a court. It pointed out, however, that

> [c]learly, the former supervisor being employed by the company that has the same owners and the same physical and mailing addresses as [Stockstill] has the potential of creating suspicion among the public and reflecting unfavorably upon the county. This is especially true. . .since [Stockstill's] bid was submitted while the former supervisor was still employed by [Stockstill].

¶7. At a meeting on May 10, 1996, the Board voted to award the contract to Columbia, the second lowest bidder. After the meeting, the clerk of the Board drafted minutes explaining that "[t]he lowest bid submitted for said project was Huey Stockstill, Inc., Picayune, Mississippi, but was rejected by this Board because of a problem with the Ethics Commission."

¶8. On May 14, 1996, Stockstill filed suit to enjoin the letting of the bridge contract to Columbia as

the second lowest bidder. Stockstill sought a declaration by the court that the Board had violated Mississippi law by its "wilful refusal to award the subject contract to Plaintiff, Huey Stockstill, Inc." On June 6, 1996, the Board filed its Answer as well as a motion to dismiss. The Board alleged that because the action was an appeal of a decision by a board of supervisors, Miss. Code Ann. § 11-51-75 (1972) required the plaintiff to file a bill of exceptions in order to vest the circuit court with subject matter jurisdiction. The Board also argued that Stockstill had failed to join Columbia as a necessary party under Miss. R. Civ. P. 19. On the same day, the Board also filed a separate motion for summary judgment, arguing that it was clearly barred by state ethics laws from awarding the contract to Stockstill. A hearing was held on the joinder issue on June 7, 1996, and Columbia was subsequently joined as a party.

¶9. On June 21, 1996, Stockstill moved to amend the complaint to include its Statement of Facts in Lieu of Bill of Exceptions. On July 30, 1996, the court entered an order granting leave to amend, and denying the Board's motion to dismiss and motion for summary judgment. In denying summary judgment, the court heeded Stockstill's contention that the Board had not complied with a provision in the state's public purchases law which requires the Board, when accepting a bid other than the lowest bid actually submitted, to "place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid." Miss. Code Ann. § 31-7-13(d)(i) (Supp. 1996). The court remarked that "this requirement is no mere formality that can be ignored by the Court," and thus considered the issue one of disputed material fact precluding summary judgment. In response to the court's statement, the Board, on August 21, 1996, entered a *nunc pro tunc* order amending its minutes to reflect the complete proceedings of its meeting on May 10, 1996 and to comply with § 31-7-13.

¶10. Stockstill filed its amended complaint on August 29, 1996. Stockstill maintains that its suit is an original action brought pursuant to Mississippi's public purchases law, Miss. Code Ann. § 31-7-1 *et seq.* (Supp. 1996), and pursuant to Miss. R. Civ. P. 57. Specifically, Stockstill seeks a declaration that the Board's order of May 10, 1996 does not comply with § 31-7-13(d)(i) and that the contract between the Board and Columbia was therefore void *ab initio*. Stockstill also seeks a declaratory judgment that the employment of Pearson violated no ethical laws and that the actions of the individual defendants, both individually and in their official capacities, were arbitrary and capricious. The Board filed its answer to the amended complaint on September 20, 1996. Defendant Columbia filed its answer on October 2, 1996.

¶11. The case proceeded to trial on December 3, 1996. On January 9, 1997, the trial court entered its order containing findings of fact and conclusions of law. The court found that the Board did not act arbitrarily and capriciously in awarding the contract to Columbia as the second lowest bidder. The court further found that "while the Board's award of the contract to Columbia did not initially comply with state purchasing laws," the Board was not in violation of § 31-7-13 as it had properly amended its minutes to the meeting on May 10, 1996 at which Stockstill's bid was rejected. The court ruled that these amended minutes related back to the original meeting.

¶12. Stockstill moved for reconsideration or in the alternative for a new trial. The trial court denied the post-trial motion on February 3, 1997. Stockstill filed its Notice of Appeal on February 10, 1997. On February 12, 1997, the trial court issued its supplement to the order denying the motion for reconsideration, more fully explaining its reasons for ruling as it did.

## II.

¶13. Stockstill first contends that the circuit court failed to properly apply Miss. Code Ann. § 31-7-13. That statute provides, in pertinent part:

> If any governing authority accepts a bid other than the lowest bid actually submitted, it shall place on its minutes detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid, including the dollar amount of the accepted bid and the dollar amount of the lowest bid. No agency or governing authority shall accept a bid based on items not included in the specifications.

Miss. Code Ann. § 31-7-13(d)(i) (Supp. 1997).

¶14. Stockstill cites *Richardson v. Canton Farm Equipment,* 608 So. 2d 1240 (Miss. 1992), as controlling authority regarding the application of the above cited statute. In *Richardson,* this Court stated:

> Our Legislature has enacted a process designed to secure adequate equipment and facilities for the public while at once assuring that no more of the public treasury is expended than is reasonably necessary, all of which but takes account of human frailty and recognizes that Supervisors deal not with their own money, but with that of their constituents. Background law regarding the nature, authority and prescribed modes for effective action of boards of supervisors undergirds the statutory bidding process.

*Id.* at 1245. Stockstill argues that pursuant to the Court's holding in *Richardson,* if the law relating to bid purchases "is not precisely followed then the resulting contract or purchase is void." Stockstill thus contends that since the court's order of January 9, 1997 stated that "the Board's award of the contract to Columbia did not initially comply with state purchasing laws," the case "should have ended right then and there."

¶15. While the above quoted passage from *Richardson* articulates the importance placed on the statutory scheme designed to ensure that the public's money is wisely spent, the trial court in the present case correctly observes that the circumstances in *Richardson* represent a more egregious breach of that scheme than those found here. The board of supervisors in *Richardson* advertised for bids to buy machinery for the county on a cash-purchase basis, but let the contract as a lease-purchase. The result was to obligate the county for interest and finance charges not contemplated in the bid advertisement. Thus, it was a change in the substance of the contract itself, and not a technical defect in the bid-letting process. Additionally, the board in *Richardson* had allowed the bidder to whom the contract was later awarded to actually deliver the equipment to the county to be used for some six months before the advertisement for bids appeared. This action "destroy[ed] the purpose of requiring bids." *Id.* at 1246. In short, the "[s]upervisors made hash of the bidding process" in *Richardson,* thus voiding the contract. *Id.*

¶16. *Richardson* does not stand for the proposition that *any* error in the bid-letting process automatically voids the resulting contract or purchase. As the trial court noted, the supervisors here followed at least the spirit of the bid process requirements and adhered in most respects to the letter of the law. Any failure by the Board in this case to comply with the requirements of the bid purchase

statutes constitutes at most a technical defect in the bid-letting process which did not render the resulting contract to Columbia void.

¶17. The appellees argue that the Board's minutes of May 10, 1996, which stated that Stockstill was not awarded the contract "because of a problem with the Ethics Commission," complied with § 31-7-13(d)(i) from the start. The Court need not address this question, however, because as we discuss next the minutes were properly amended to fully comply with the requirements of that subsection.

## III.

¶18. Stockstill alleges that the trial court committed reversible error when it ruled that *nunc pro tunc* order of the Board of August 21, 1996, amending the minutes of the previous meeting of May 10, 1996, related back to that date. Stockstill argues that "acceptance of these second try Minutes is wholly against applicable law and error on the part of the Court."

¶19. The Board replies that the amended minutes are an accurate and more detailed explanation of what actually happened at the meeting on May 10, 1996. As such, "there was no effort made by the Board of Supervisors to assert additional or new reasons why the bid had not been originally awarded to Huey Stockstill."

¶20. Boards of supervisors have the general power to alter or amend their orders. *See* Miss. Code Ann. § 19-3-40 (1995). In *Walters v. Validation of $3,750,000.00 School Bonds,* 364 So. 2d 274, 276 (Miss. 1978), this Court implicitly recognized that a governing body may, at a subsequent meeting, amend the minutes of the prior meeting to reflect what actually occurred on the first occasion.

¶21. Moreover, this Court has recently recognized that a trial court sitting in an appellate capacity from a decision by a government body may remand the matter to that body for more detailed findings where the record does not adequately support the governmental decision. *See **Sunland Publishing Co. v. City of Jackson,** 710 So. 2d 879 (Miss. 1998).* In **Sunland Publishing,** the City Council of Jackson awarded a newspaper publishing contract to the second lowest bidder. Because the order submitted to the circuit court explaining the council's action did not clearly comply with applicable statutory requirements, the court remanded the matter to the council "with instructions for further findings to be included in an appropriate order." **Id.** at 881.

¶22. The rule that a governing body may amend its minutes to speak the truth is in accord with other jurisdictions. The general rule as to the amendments of the minutes of council meetings is stated in *City of Guntersville v. Walls,* 39 So. 2d 567 (Ala. 1949):

> "A municipal council may, at a subsequent meeting, if no intervening rights of third persons have arisen, order the minutes or record of its own proceedings at a previous meeting to be corrected according to the facts, so as to make them speak the truth, although the record has once been approved. On the other hand, an erroneous record of the proceeding of a municipal council cannot be corrected or amended to the destruction of rights acquired under it in good faith, without notice of the error...."

*Id.* at 569 (quoting 37 Am Jur. *Municipal Corporations* § 65). *See also **Estes v. City of Gadsden,** 94

So. 2d 744, 747 (Ala. 1957) (ordinance that is invalid because of noncompliance with statutory requirements when first enacted may be validated by subsequent amendments of the minutes).

¶23. Thus, a governing body such as a board of supervisors or city council, with proper notice to any party who acquires rights under the original minutes, can amend those minutes to ensure that they speak original truth or further explain the original rationale of the action. Such amendments may not be used to invent new reasons for the governing body's action or collaterally attack a particular vote.

¶24. In the present case, there is ample evidence that the amended minutes reflect the actual occurrences at the meeting on May 10, 1996 as well as the Board's original rationale for awarding the bridge contract to Columbia. The Board's request for two separate opinions from the Commission makes it clear that ethical concerns were paramount in the Board's decision-making process. The original minutes, while admittedly sparse, did recite the ethical "problem" as the reason for rejecting Stockstill's bid. Finally, the only witness at trial--an employee of Stockstill who was present at the original meeting of the Board on May 10--admitted that "there was a great deal of discussion about this bridge project and about the ethic [sic] opinion."

¶25. We conclude, therefore, that the circuit court properly found that the *nunc pro tunc* amendment of August 21, 1996 was proper and that it related back to the date of the Board's original meeting on May 10, 1996.

## IV.

¶26. Stockstill next argues that the circuit court erred in finding that the actions of the Board in awarding the contract to Columbia were not arbitrary and capricious. Stockstill maintains that the Board's concern with the propriety of the employment of Mr. Pearson and the ethical concerns that it raised are a "phantom issue" in this case, since it is undisputed that Pearson was not employed by Stockstill on May 10, 1996, when the contract was awarded.

¶27. This issue was brought before the circuit court as an appeal from a lower authority, namely a county board of supervisors. As such, the decision of the Board is not to be disturbed, either by the trial court or by this Court, if its validity is fairly debatable. "Such an order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." *Sunland Publishing,* 710 So. 2d at 882; *City of Jackson v. Capital Reporter Pub. Co.,* 373 So.2d 802, 807 (Miss. 1979); *Board of Supervisors of Clay County v. McCormick,* 207 Miss. 216, 228, 42 So. 2d 177, 179 (1949). *See also* URCCC 5.03.

¶28. As to whether the actions of the Board here were arbitrary and capricious, the circuit court states in its order of January 9, 1997:

> The record reflects that the Board was aware of, and took steps to avoid, a possible conflict of interest even before all of the bids were accepted for the bridge contract. Once it was determined that Stockstill was, in fact, the low bidder, the Board sought further advice from the Ethics Commission regarding the propriety of awarding the contract to Stockstill based on Pearson's somewhat cosmetic change of employment. This action shows that the Board took serious consideration of its duties to avoid even the appearance of impropriety. *See* Miss. Code Ann. § 25-4-101 (1972).

Based on the Ethics Commission's second opinion, the Board awarded the contract to Columbia as the lowest and best bidder. Thus, there is substantial evidence in the record that the Board considered its options, weighed the propriety of the bid award, and ultimately settled on Columbia Welding as the best choice.

¶29. As the circuit court observes, the Board's actions cannot be deemed arbitrary and capricious. While it is true that the Commission, in its second opinion, would not affirmatively state that the relation between Stockstill and Custom Aggregates was such as to constitute a violation of constitutional or statutory ethics provisions, it nevertheless noted that awarding the contract to Stockstill "has the potential of creating suspicion among the public and reflecting unfavorably upon the county. This is especially true. . .since [Stockstill's] bid was submitted while the former supervisor was still employed by [Stockstill]." Bearing in mind this admonition by the Ethics Commission, and the fact that the Board requested and considered not one, but two opinions from the Commission, we cannot say that the Board's action in letting the contract to Columbia as the second lowest bidder was arbitrary and capricious. *See **Watkins v. Mississippi Bd. of Bar Admissions,*** 659 So. 2d 561, 568 (Miss. 1995) (defining "arbitrary and capricious" as denoting an act "not done according to reason or judgment, but depending on the will alone" or "done without reason, in a whimsical manner").

## V.

¶30. Stockstill contends, once again, that the circuit court improperly considered the *nunc pro tunc* amendment of August 21, 1996. It is argued--though not at all clearly--that the consideration of the amended minutes is different as it relates to the portion of the present case which constitutes the appeal of the contract award. Stockstill's argument is based on the assumption that once the circuit court is vested with subject matter jurisdiction, Stockstill's intervening rights as a third party are implicated and any amendments to the minutes made thereafter are not effective. Stockstill advances a separate argument, apparently, to emphasize that even for the appeal portion of the case jurisdiction of the court vested before the minutes were amended. In other words, Stockstill makes the point that even though the amended complaint was filed on August 29, 1996, the pleading relates back under Miss. R. Civ. P. 15(c) to the date of the original pleadings on May 14, vesting jurisdiction in the court before the minutes were amended on August 21.

¶31. This argument clearly ignores the fact that the amendments to the minutes *also* relate back. Therefore, the minutes were deemed amended and in compliance with statutory requirements as of the date of the original meeting of May 10, 1996, four days before this suit was filed. This assignment of error has no merit.

## VI.

¶32. Finally, Stockstill argues that the circuit court accorded "undue deference" to the actions of the Board in awarding the contract to Columbia. This "issue" is essentially a rehash of various arguments already dealt with above, most notably the circuit court's relation back and consideration of the amendment of the Board's minutes on August 21, 1996. We find no merit to this assignment of error.

## VII.

¶33. For the foregoing reasons, the judgment of the circuit court is affirmed.

¶34. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING.**


1. The Board was concerned not only with the ethical implications of Pearson's recent service on the Board, but also with the fact that another Board member, Charles Ray Stockstill, is the brother of Huey Stockstill, president and majority stockholder of Huey Stockstill, Inc. Regarding this relationship, the Commission opined that while it was not a technical violation for the Board to do business with a company controlled by a supervisor's brother, such circumstances "should be closely reviewed by public servants with the intent to reduce or eliminate any suspicion on the part of the public."