# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CC-00864-COA

**DESOTO COUNTY, MISSISSIPPI**          **APPELLANT**

**v.**

**ANTHONY VINSON, QUMA VINSON,**          **APPELLEES**
**WILLIAM ALLEN, AND HANNAH ALLEN**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/06/2021 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SAMUEL THOMAS BARBER |
| ATTORNEY FOR APPELLEES: | J. KEITH TREADWAY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 12/06/2022 |
| MOTION FOR REHEARING FILED: | |

### BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     This appeal involves the DeSoto County Board of Supervisors' (second)[1] approval of

an application to subdivide a residential lot.  Mississippi Code Annotated section 17-1-23(4)

(Rev. 2012) states that a landowner may petition a county's board of supervisors "to alter or

vacate such map or plat" of land in a subdivision, "giving an accurate description of the

property, the map or plat of which is to be vacated or altered and the names of the persons

to be adversely affected thereby or directly interested therein."  The statute further provides

that "before taking such action, the parties named shall be made aware of the action and must

---

[1] The DeSoto County Circuit Court reversed the Board's initial decision to approve the application for the same reason stated in its subsequent ruling. *See infra* ¶¶6, 8.

agree in writing to the vacation or alteration." *Id*. The failure "to gain approval from the parties named" prohibits the board from approving the application. *Id*.

¶2. Because the DeSoto County Board of Supervisors (Board) approved the landowner's application to subdivide her residential lot "without any approval from directly interested and/or adversely affected persons and without any attempts to identify anyone as such," the DeSoto County Circuit Court reversed the Board's decision. Aggrieved, DeSoto County appeals from the judgment. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On July 23, 2019, Robert Farley, on behalf of Gladys Allison (the landowner) and Nick Harris (the property developer), submitted a "Major Subdivision Application" (application) to the Board for Lot 4 located at 2114 Charles Road. Specifically, the application requested that Lot 4 (subject property), which is 7.89 acres, be divided into two residential lots (Lots 4A and 4B).

¶4. A hearing before the county's planning commission was held on August 1, 2019. Keith Treadway, an attorney representing Anthony and Quma Vinson (the Vinsons), who own property adjacent to Lot 4, argued that Mississippi law requires that the landowner obtain the approval of any adversely affected persons (i.e., the Vinsons). Mr. Vinson also claimed that the county's planning department staff told him that the "application would not be taken unless a plat with all the neighbors' signatures was submitted." The planning commission, however, unanimously approved the application without those signatures.

2

¶5.     The Board reviewed the application at a hearing on August 19, 2019. Treadway again argued that the landowner was required by law to obtain signatures from those "adversely affected by the dividing of Lot 4" before the Board could approve the application.  Mr. Vinson expressed his concern to the Board that the area would become "more congested" if another home was allowed on Lot 4.  Mr. Vinson acknowledged that he had attempted to purchase the subject property "at fair market value and was turned down."  The Board unanimously approved the application "to include a finding that there [were] no adversely affected parties that will be required to sign the final plat."

¶6.     The Vinsons, along with neighboring landowners William and Hannah Allen,[2] filed an appeal with the circuit court.  On April 23, 2020, the circuit court reversed the Board's decision,[3] finding that for the application to be approved, "the plat must be signed by persons 'adversely affected thereby or directly interested therein or the applicant must follow the alternative procedure in Miss. Code Ann. § 19-27-31.'"[4]

---

[2] We will collectively refer to the Vinsons and the Allens as the Appellees.  The Vinsons own Lot 5B; a portion of Lot 5B's southern boundary is adjacent to Lot 4 and the other portion is across the road from it.  The Allens own Lot 5A directly across the road from Lot 4.  The southern boundary of Lot 5C, owned by Sue Williams, is adjacent to Lot 4, but she is not a named party in this action.

[3] The circuit court's order is not contained in the record; so this information is taken from the Appellees' brief.  That judgment is not at issue on appeal.

[4] Mississippi Code Annotated section 19-27-31 (Rev. 2012) provides an alternative procedure for the approval of an amendment or alteration of land in chancery court, stating that before a landowner may alter or vacate a map or plat, the landowner

may, under oath, petition the chancery court for relief . . . setting forth the

3

¶7.     In accordance with the court's order, the Board placed the application on the agenda for its June 15, 2020 meeting. At that meeting, the Board heard additional feedback from the property developer, the Vinsons, Treadway, and county planning department staff. Treadway asserted "that the Board must determine affected and interested parties" and that "the Vinsons are adversely affected parties since Charles Road directly touches Lot 5B that bends into Lot 4." Treadway also argued that "any lot that touches Lot 4 is directly interested." The Board again unanimously approved the application, concluding:

> [T]here are no adversely affected or directly interested parties with respect to the requested lot division as it will not affect setback lines, no common open space is affected, will not affect permitted used on property, will not adversely affect access, will not increase traffic and keeps in general character of the area.

The Appellees appealed the Board's decision to the circuit court.

¶8.     On July 6, 2021, the circuit court again reversed the Board's decision, finding:

> Pursuant to the plain language of [section 17-1-23(4)], Gladys Allison was required to set forth in her petition the names of the persons to be "adversely affected" or "directly interested" in the proposed division. Further, *before petitioning the Board of Supervisors*, those parties must be made aware of the action *and agree in writing to the alteration*. Failure to gain approval from

> particular circumstances of the case and giving an accurate description of the property, the map or plat of which is to be vacated, or altered, *and the names of the persons to be adversely affected thereby, or directly interested therein*. The parties so named shall be made defendants thereto, and publication of summons shall be made one time in a newspaper published, or having a general circulation, in the county where the land is situated, and which publication shall clearly state the objects and purposes of the petition.

(Emphasis added).

those parties precludes the Board from "altering or vacating the map or plat."

Thus, the court concluded that the Board had "exceeded its statutory authority" in approving the application. The court further noted that because the application was presented without "any approval" from the directly interested or adversely affected parties, the court "need not determine whether the Board's determination that no directly interested and/or adversely affected parties exist was supported by substantial evidence." Lastly, the circuit court's judgment permitted the landowner, Allison, to resubmit the application to the Board "with written approval of directly interested and/or adversely affected persons."

¶9. Appealing the court's ruling, DeSoto County requests that this Court reverse the judgment and reinstate the Board's decision.

## STANDARD OF REVIEW

¶10. Our review of a county board of supervisors' actions is limited. *Billy E. Burnett Inc. v. Pontotoc Cnty. Bd. of Sup'rs*, 940 So. 2d 241, 242-43 (¶5) (Miss. Ct. App. 2006). The board's decision will not be set aside "unless that decision is 'clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis.'" *Id*. at 243 (¶5) (quoting *Huey Stockstill Inc. v. Hales*, 730 So. 2d 539, 545 (¶27) (Miss. 1998)). "It is not the role of the judiciary to reweigh the evidence, but rather to verify if substantial evidence exists." *Childs v. Hancock Cnty. Bd. of Sup'rs*, 1 So. 3d 855, 861 (¶19) (Miss. 2009). Thus, "such a decision is not to be overturned if its validity is 'fairly debatable.'" *Burnett*, 940 So. 2d at 243 (¶5) (quoting *Stockstill*, 730 So. 2d at 545 (¶27)).

5

**DISCUSSION**

¶11.    The circuit court noted that Allison sought to "alter an existing subdivision map or plat by . . . petitioning the Board of Supervisors in accordance with [section] 17-1-23." Subsection (4) of this statute provides in pertinent part:

> If the owner of any land which shall have been laid off, mapped or platted as a city, town or village, or addition thereto, or subdivision thereof, or other platted area, whether inside or outside a municipality, desires to alter or vacate such map or plat, or any part thereof, he may petition the board of supervisors of the county or the governing authorities of the municipality for relief in the premises, setting forth the particular circumstances of the case and giving an accurate description of the property, the map or plat of which is to be vacated or altered ***and the names of the persons to be adversely affected thereby or directly interested therein.***  However, ***before taking such action, the parties named*** shall be made aware of the action and ***must agree in writing to the vacation or alteration.  Failure to gain approval from the parties named shall prohibit the board of supervisors or governing authorities from altering or vacating the map or plat, or any part thereof.***

Miss. Code Ann. § 17-1-23(4) (emphasis added).[5]

¶12.    DeSoto County does not dispute that section 17-1-23(4) requires the applicant to gain approval from those "adversely affected . . . or directly interested." DeSoto County contends, however, that the determination of those persons considered to be adversely affected or directly interested was a question of fact to be determined by the Board.  And, in this case, the Board determined that there were "no adversely affected or directly interested parties

---

[5] Although the Appellees claim that no notice of the proposed amendment to the plat was provided, the record demonstrates that both Mr. Vinson and Treadway, the Appellees' attorney, were in attendance at the planning commission meeting and the two Board meetings to argue against the application's approval.  However, the issue of notice is not dispositive to our findings in this instance.

with respect to the requested lot division." Further, DeSoto County "disagrees that [section] 17-1-23 requires the signatures of parties *to be attached to the application before* the Board can determine which parties are, in fact, adversely affected or directly interested." (Emphasis added). DeSoto County contends that "[t]hose signatures and approvals are then only required for the recording of the final revised plat, as that is the action contemplated in [the statute]."

¶13. Indeed, the Mississippi Attorney General's Office has opined that because section 17-1-23 does not define the phrases "adversely affected" and "directly interested," "the determination of those persons that must be named in the petition presented to the board of supervisors and who must agree in writing to the alteration is a question of fact that must be made by the board of supervisors." Miss. Att'y Gen. Op., 2004-0208, 2004 WL 1638722, *Nowak*, at *2 (June 4, 2004). Subsequently, in *City of Gulfport v. McHugh*, 38 So. 3d 674, 677 (¶12) (Miss. Ct. App. 2010), this Court also recognized that those persons "'adversely affected' and 'directly interested' . . . was a factual issue that should have been determined by the [Board]." In its order, the circuit court acknowledged our holding in *McHugh* but further determined that "the applicant is not in any way relieved from identifying those persons and obtaining their approval *prior* to petitioning" the Board for relief under section 17-1-23.

¶14. We find the circuit court's reasoning is in accord with the relevant caselaw. In *COR Developments LLC v. College Hill Heights Homeowners LLC*, 973 So. 2d 273, 282 (¶22)

7

(Miss. Ct. App. 2008), this Court determined that section 17-1-23(4) gives a board of supervisors "authority to alter or vacate a map or plat upon petition by the landowner . . . *accompanied by the written agreement of the persons to be adversely affected by or directly interested in the change*." (Emphasis added).[6] The appellant in *COR* argued that compliance with the statute is "permissive." *Id*. at 283 (¶24). We rejected that argument, holding that the Mississippi Supreme Court "has consistently viewed the statutory plat alteration procedure as mandatory for a landowner to secure alteration or vacation of a plat or map." *Id*. at 284 (¶25) (citing *Barrett v. Ballard*, 483 So. 2d 304, 306 (Miss. 1985); *Reinecke v. Reinecke*, 105 Miss. 798, 806, 63 So. 215, 216 (1913)).[7] We further held, "It is only when the directly interested or adversely affected persons agree in writing that the landowner may secure the vacation or alteration from the Board of Supervisors under section 17-1-23(4)." *Id*.

¶15. Relying on our holding in *COR*, the circuit court in this case concluded that the applicant was required to obtain approval from those adversely affected or directly interested persons *before* the Board reviewed the application. DeSoto County claims that the court's reliance on *COR*, on what DeSoto County terms "dicta language," was error. We find no

[6] In *COR*, we noted that "the other landowners in the subdivision" were not provided notice, nor did the petitioning landowner publish notice in accordance with section 19-27-31. *COR*, 973 So. 2d at 275 (¶¶2, 4).

[7] Although *Barrett* addressed a petitioner's failure to comply with the mandatory requirement for publication of summons set forth in section 19-27-31, we note that those persons opposing the petition were fifty "neighboring landowners" who argued the vacating of the plat in question would affect them. *Barrett*, 483 So. 2d at 305-06.

merit to the county's argument. In *McHugh*, this Court also relied on our holding in *COR* in finding that the landowners had "failed to follow statutory procedure by not notifying the adversely affected or directly interested parties and obtaining their approval in writing." *McHugh*, 38 So. 3d at 675, 677 (¶¶2-5, 12).[8] "Further, it was not determined who the appropriate adversely affected or directly interested parties were." *Id*. at 677 (¶12). As acknowledged, *see supra* ¶13, *McHugh* stated that factual determination was for the Board. *Id*. But we agree with the circuit court that *McHugh* does not relieve the landowner from identifying those potential "adversely affected" or "directly interested" parties in his or her application, as required by section 17-1-23.

¶16. Even more recently, this Court considered another appeal involving DeSoto County and the Vinsons, which addressed this identical issue for a different property location. In *DeSoto County v. Vinson* (*Vinson I*), 335 So. 3d 1105, 1105 (¶1) (Miss. Ct. App. 2022), the Board had approved the subdividing of property owned by Mitchell Shaw into two residential lots.[9] As in the present case, the circuit court reversed the Board's decision and ordered that the landowner's application "be resubmitted with written approval of 'directly interested' and/or 'adversely affected' persons[.]" *Id*. at 1106 (¶4). We affirmed the circuit court's

---

[8] In *McHugh*, it was the "adjoining property owners to the north and south" of the lot, as well as "other residents of the subdivision," who objected to the lot's division. *McHugh*, 38 So. 3d at 675 (¶¶3, 5). No determination was made regarding who "the appropriate adversely affected or directly interested parties were." *McHugh*, 38 So. 3d at 677 (¶12).

[9] The subject property was Lot 40; the Vinsons owned Lot 21, which was across the street from Lot 40. *Vinson I*, 335 So. 3d at 1106 (¶3).

holding that the landowner had not complied with section 17-1-23(4)'s requirement to list those parties in the application, finding:

> It is undisputed that not only did Shaw not set forth any names of "adversely affected" or "directly interested" parties, he admittedly did not speak to anyone in the neighborhood about his petition. While this fact alone is a deviation from the requirements set forth by the plain language in section 17-1-23(4), *the actions taken by Shaw in this case further deviated from the statute in that no "adversely affected" or "directly interested" parties were made aware of the action*[10] *and none agreed in writing to the alteration of the subdivision lot.*

*Id*. at 1108 (¶¶7, 9) (emphasis added). The dissent asserts that this Court affirmed the circuit court's judgment to reverse in *Vinson I* "because the Board had determined that there *was* a directly interested or adversely affected party," (i.e., the landowner of the neighboring Lot 39) who was not given notice.[11] *See id*. at 1108 (¶9). We respectfully disagree. Our analysis in *Vinson I* clearly indicates the Board's factual determination was simply a contributing factor in our decision to affirm the circuit court's ruling that "Shaw's application should be resubmitted with the written approval of "adversely affected" and "directly interested" parties." *Id*.

¶17. With regard to the county's contention that the "action" contemplated in the statute is the final recording of the plat, DeSoto County cites no authority to support this argument. Furthermore, as discussed, the statute and relevant caselaw clearly do not support such an

---

[10] As noted, *see supra* note 5, the Vinsons evidently were aware of the application in the present case. The record is silent as to whether the owners of adjacent properties (Lot 5C and Lot 3) had any notice.

[11] We made no finding as to whether the Vinsons were "directly interested" parties.

interpretation of the statute. Section 17-1-23(4) provides that a landowner may file a petition for the county "to alter or vacate such map or plat," but "*before* taking such action," he or she must set forth "the names of the persons to be adversely affected thereby or directly interested." (Emphasis added). "[T]he parties named shall be made aware of the action and must agree in writing to the vacation or alteration." *Id*. The "[f]ailure to gain approval from the parties named shall prohibit the board of supervisors . . . from altering or vacating the map or plat[.]" *Id*.

¶18. This interpretation of the statute does not prevent the Board from making a factual determination of those persons "adversely affected" or "directly interested." In considering parties named in a petition or application and whose approval was submitted, the Board can decide whether those identified persons' approvals are sufficient or whether additional parties must be named and their signatures acquired. If the landowner cannot obtain those signatures (approval), he or she may then proceed in chancery court under the statutory procedure outlined in section 19-27-31, as noted in the court's judgment. The record shows that when the Vinsons applied to alter or subdivide their lot, signatures from all neighboring landowners had been obtained, including Allison, the owner of Lot 4 at issue here.

¶19. The landowner's application in this case was silent as to *any* potential "adversely affected" or "directly interested" parties. If there were, in fact, no such parties, the landowner should have included a statement to that effect. She did not do so. This omission from the application thus would imply that the adjacent landowners—which includes the

11

Vinsons—were not, at a minimum, "directly interested" in the subdividing of the subject property. The Vinsons' participation at the Board hearings and appeals to the circuit court is evidence to the contrary.[12] This implication is contradictory to the Board's determination in *Vinson I* that the adjacent landowner of Lot 39 was a "directly interested" party. Therefore, in accordance with the statute and our holdings in *COR*, *McHugh*, and *Vinson I*, we find the landowner's failure in this case to accompany the application with the names of those persons adversely affected or directly interested and their signatures approving the division of the subject property violated the requirements of section 17-1-23(4).[13]

¶20.    Finding no error, we affirm the circuit court's judgment.

¶21.    **AFFIRMED.**

   **GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.  CARLTON, P.J., AND EMFINGER, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

   **WILSON, P.J., DISSENTING:**

¶22.    An application filed with a board of supervisors to alter a subdivision plat must include "the names of the persons to be adversely affected thereby or directly interested

_____

[12] The circuit court did not address the Board's finding that there were no "adversely affected" or "directly interested" parties because the landowner's application did not comply with the statute.

[13] Both parties also cite *Brinsmade v. City of Biloxi*, 70 So. 3d 1159 (Miss. Ct. App. 2011), to support their arguments.  However, we specifically noted in *Brinsmade* that "section 17-1-23(4) [did] not apply to the case at hand," as the issue there was the board's decision to vacate an easement; the case did not concern the subdivision of a map or plat. *Id*. at 1164 (¶¶16, 18).

therein." Miss. Code Ann. § 17-1-23(4) (Rev. 2012). In addition, the applicant must notify those persons of the petition and obtain their written consent to the proposed alteration. *Id.*; *COR Devs. LLC v. Coll. Hill Heights Homeowners LLC*, 973 So. 2d 273, 282-84 (¶¶22, 25) (Miss. Ct. App. 2008); *City of Gulfport v. McHugh*, 38 So. 3d 674, 676 (¶¶10-13) (Miss. Ct. App. 2010). However, the ultimate determination of which persons are "adversely affected" by or "directly interested" in the proposed alteration is a "factual issue" for the board. *McHugh*, 38 So. 3d at 676 (¶12); *see also* Miss. Att'y Gen. Op., 2004-0208, 2004 WL 1638722, *Nowak*, at *2 (June 4, 2004) ("[T]he determination of those persons that must be named in the petition presented to the board of supervisors and who must agree in writing to the alteration is a question of fact that must be made by the board of supervisors.").

¶23.    In this case, the application did not identify any "adversely affected" or "directly interested" parties. However, following discussion at a regular public meeting, including a presentation regarding the Vinsons' objections, the Board of Supervisors not only approved the application to divide the 7.89-acre lot at issue but also made a specific "finding that there are no adversely affected or directly interested parties with respect to the requested lot division as it will not affect setback lines, no common open space is affected, will not affect permitted uses on property, will not adversely affect access, will not increase traffic and keeps in general character of the area."

¶24.    The majority acknowledges that this is indeed a factual issue for the Board. *Ante* at ¶13. But the majority states that if there were no adversely affected or directly interested

parties, then "the landowner should have included a statement to that effect" in her application. *Ante* at ¶19. In addition, the majority holds that the Board's decision must be reversed and set aside because the application did not include such a statement.

¶25.    Perhaps it would have been better practice for the application to state that there were no adversely affected or directly interested parties. However, that error, if it was error, was surely harmless. The inclusion in the application of "a statement to that effect" obviously would not have affected the Board's factual finding or decision. If we require the landowner to start over and file a new application with a "statement to that effect," then presumably the Board will make the same finding and decision again, the Vinsons and Allens will appeal again, the case eventually will end up back here again, and we will be asked again to review the Board's finding that the Vinsons and Allens are not adversely affected by or directly interested in the proposed alteration of the plat.

¶26.    I would affirm the Board's finding that the Vinsons and Allens are not adversely affected by or directly interested in their neighbor's request to split a 7.89-acre lot into a 3.38-acre lot and a 4.51-acre lot. That finding is supported by substantial evidence and is not arbitrary or capricious, as there is nothing in the record to explain how the Vinsons or Allens will be adversely affected by the alteration of the plat. *McHugh*, 38 So. 3d at 676 (¶7) (stating our standard of review). In any event, I would at least decide that issue on the merits in this appeal rather than requiring the landowner to file a new application stating what the

14

Board has already found.[14]  Accordingly, I respectfully dissent.[15]

_____

[14] The majority asserts that the very fact that the Vinsons objected to the application and then appealed the Board's decision is itself "evidence" that they are directly interested parties. *Ante* at ¶19.  But there is also evidence that, as one supervisor put it, the Vinsons are merely "disgruntled" because Allison previously declined the Vinsons' below-asking-price offer to buy the subject property.  Ultimately, whether the Vinsons are directly interested parties is a "factual issue" for the Board to decide, *McHugh*, 38 So. 3d at 676 (¶12), and we must affirm if there is substantial evidence to support the Board's finding.  If the majority thinks there is no substantial evidence to support the Board's finding, then the majority should say so.  Instead, the majority only sends the case back for the Board to make the same finding again.

[15] This case is distinguishable from our recent decision in a case in which the Vinsons challenged the same Board's decision to alter the plat of a different subdivision.  In that case, we affirmed the circuit court's judgment reversing the Board's decision because the Board had determined that there *was* a directly interested or adversely affected party, and the applicant had never given notice to or obtained the consent of that party.  *DeSoto County v. Vinson*, 335 So. 3d 1105, 1108 (¶9) (Miss. Ct. App. 2022).

15