# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01941-SCT

*ELECTRONIC DATA SYSTEMS CORPORATION*

*v.*

*MISSISSIPPI DIVISION OF MEDICAID, RICA LEWIS-PAYTON, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE DIVISION OF MEDICAID, AND CONSULTEC, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2001 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | STEVE J. ALLEN |
| | EDMUND L. BRUNINI, JR. |
| ATTORNEYS FOR APPELLEES: | JOHN L. MAXEY, II |
| | DONNA ROSS PHILIP |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: HAROLD PIZZETTA, III |
| | GWENDOLYN G. COMBS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 09/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the chancellor's entry of a final judgment affirming the Division of Medicaid's award of its fiscal agent contract to Consultec, LLC, Electronic Data Systems Corporation has appealed, asserting several errors supposedly committed by the chancellor.  Upon a careful review of the record and

consideration of the applicable law, we find no reversible error and thus affirm the final judgment of the Chancery Court of the First Judicial District of Hinds County.

## FACTS AND PROCEEDINGS IN THE ADMINISTRATIVE AGENCY AND THE CHANCERY COURT

¶2. Electronic Data Systems Corporation (EDS) had served as the fiscal agent for the Mississippi Division of Medicaid (DOM) since 1994. DOM is but one of many state administrative agencies required to procure personal and professional services, such as fiscal agent services, pursuant to the State of Mississippi Personal Service Contract Procurement Regulations (PSCPR), which provides that the contracting for such services may be accomplished by (1) "Competitive Sealed Bids," (2) "Competitive Sealed Proposals,"(3) "Small Purchases," (4) "Sole-Source Procurement," or (5) "Emergency Procurement."[1]

¶3. EDS was initially awarded the DOM fiscal agent contract in 1994 using the sole-source procurement method.[2] The primary task of the DOM fiscal agent is to maintain and operate DOM's Medicaid Management Information System (MMIS), which consists of computer hardware and software used to process the numerous "Medicaid claims from providers of medical care and services for the medical care and services furnished to recipients under the medical assistance program."

¶4. Helen Wetherbee (Wetherbee) was the DOM Executive Director until August 13, 1999. While Wetherbee was Executive Director of DOM, she was responsible for submitting to the Health Care Financing Administration (HCFA), the federal source of financial assistance, DOM's Advanced Planning

---

[1]The Personal Service Contract Procurement Regulations (PSCPR) define these five terms and likewise contain provisions governing which of the five methods should be utilized.

[2]The PSCPR defines sole-source procurement as follows: "A contract may be awarded for contracts without competition when the head of a purchasing agency, or a designee determines in writing that there is only one source for the required service."

Document (APD) for certain vendor services. An APD is a concise written "plan of action" submitted by a state division of Medicaid seeking federal funding from HCFA to determine need, feasibility and cost factors for the acquisition of automatic data processing equipment or services. The APD submitted by Wetherbee was dated May 4, 1999, and sought permission from HCFA "to request proposals for Fiscal Agent services for the period January 1, 2001, through June 30, 2005." HCFA approved the DOM's APD on May 18, 1999. Upon receiving HCFA approval of its previously submitted APD, DOM prepared and issued a Request for Proposal (RFP) on July 1, 1999, inviting vendor proposals for the contract to serve as DOM's fiscal agent.[3] Three parties submitted proposals in response to the RFP, EDS (the incumbent), Unisys, and Consultec, LLC (Consultec).[4] However, none of these parties met the minimum technical scores for the RFP, and thus the procurement was cancelled by the Governor. DOM provided notice to HCFA of the cancellation of the 1999 fiscal agent procurement. EDS's contract was to expire by its terms on December 31, 2000; therefore, because no new contract was awarded from the 1999 RFP, DOM extended EDS's contract through December 31, 2001.

¶5.     After leaving DOM, Wetherbee went to work in the private sector before accepting a position as Consultec's Account Manager in early 2001; however, employment with Consultec was contingent upon Consultec being awarded the DOM contract. As a potential account manager, Wetherbee was required to participate during portions of Consultec's preparation and presentation of materials in the oral interview process in the bid for DOM's fiscal agent contract.

_____

[3]According to the PSCPR, when the head of a purchasing agency, or that person's designee, makes a determination "that the use of competitive sealed bidding is either not practicable or not advantageous to the State, a contract may be entered into by competitive sealed proposals," which process involves the issuance of a Request for Proposals (RFP).

[4]Consultec's successor company is ACS State Health Care.

¶6.     Under a new agency administration with Rica Lewis-Payton (Lewis-Payton) serving as executive director, DOM, as required by federal regulations, submitted to HCFA the 2000 RFP for review and approval. By letter dated August 25, 2000, HCFA approved the 2000 RFP and thus, a new RFP was once again issued on September 8, 2000, seeking vendor proposals for the DOM fiscal agent contract to render services commencing on January 1, 2002. However, the new RFP was issued under the same APD which had been utilized in issuing the 1999 RFP. DOM did not submit another APD or an APD update to HCFA because, according to DOM officials, the federal funding limits had already been established. This time only EDS and Consultec submitted bids.

¶7.     On March 9, 2001, DOM stated its intent to award the fiscal agent contract to Consultec, which would take over the fiscal agent services on January 1, 2002, while EDS would continue to serve out its contract extension. Lewis-Payton informed the Personal Services Contract Review Board (PSCRB or the "Board") that there was little difference between the proposals submitted by EDS and Consultec. However, Lewis-Payton stated Consultec submitted a bid $20 million lower than that submitted by EDS. Consultec stated this bid was a "rock bottom" price with the expectation that it would receive additional revenue from future enhancements of the contract.

¶8.     As required by statute, DOM sought the approval of the PSCRB. Pursuant to Miss. Code Ann. § 25-9-120(3)(b), the PSCRB has the authority and responsibility to "[a]pprove all personal and professional services contracts involving the expenditures of funds in excess of One Hundred Thousand Dollars ($100,000.00)."[5] The PSCRB also provides the standards for the "issuance of requests for proposals, the evaluation of proposals received, consideration of costs and quality of services proposed,

_____

[5]According to the PSCPR, procurements of $100,000 or less would be classified as "small purchases," thus negating the need for PSCRB approval.

4

contract negotiations, the administrative monitoring of contract performance by the agency and successful steps in terminating a contract." *Id*. § 25-9-120(3)(e). The PSCRB is also statutorily obligated to "[d]evelop standards with respect to contractual services personnel which require invitations for public bid, requests for proposals, record keeping and financial responsibility of contractors. . . ." *Id*. § 25-9-120(3)(c). The PSCRB may, in its discretion, reserve the right to reject any or all bids. *Id*.

¶9. On March 15, 2001, the Board considered DOM's award of the fiscal agent contract to Consultec. Included as part of the minutes of the Board's meeting was a letter from EDS's counsel outlining EDS's concerns regarding Wetherbee's involvement and certain ethical violations EDS believed to have occurred which would render an award of the contract to Consultec void.[6] The gist of EDS's concerns was whether certain ethical standards had been violated due to Wetherbee having participated in the issuance of the first RFP while at DOM, only to have her future employer, Consultec, be the ultimate successful bidder for the DOM fiscal agent contract awarded pursuant to a separate RFP which was issued after Wetherbee had left DOM, but under the same APD which had received HCFA approval while Wetherbee was still at DOM. The Board determined this letter represented the only objection received regarding DOM's fiscal agent contract. The Board then inquired as to whether the Ethics Commission had been consulted regarding the issue raised in the letter. Gwen Combs, counsel for DOM, advised the Board that she had consulted with certain individuals at the Mississippi Ethics Commission. Counsel for EDS requested that

---

[6]At the subsequent chancery court hearing, EDS, through counsel, on more than one occasion, attempted to make it abundantly clear what claims it was asserting against Wetherbee. In opening statements before the chancellor, EDS's attorney stated that the issue was whether "Wetherbee's participation as account manager in the Consultec bid....constitute[d] a statutory violation" and a violation of "certain regulations in the procurement process." Later on in his opening statements, EDS's counsel stated that EDS was "asking [the chancellor] to review very closely the issue of whether or not Consultec should be entitled to benefit from the violation of [Miss. Code Ann. § 25-4-105]; and...whether or not [Consultec] can violate as a responsive bidder...if in fact [Consultec] violated the procurement regulations."

the Board postpone taking any action regarding the fiscal agent contract until such time as all the parties were able to address each issue of concern with the award of the contract. However, the Board determined that DOM had complied with all rules and regulations required by the PSCRB; therefore, in the Board's opinion, no issues presented before the Board justified postponing taking action regarding the contract. At the conclusion of that portion of the meeting pertaining to this contract, the PSCRB approved DOM's award of its fiscal agent contract to Consultec.

¶10. On May 1, 2001, EDS filed a complaint in the Hinds County Chancery Court disputing DOM's decision to award its fiscal agent contract to Consultec. EDS filed its original complaint against DOM and Consultec alleging that by Consultec's hiring Helen Wetherbee as account manager, Consultec violated state laws as well as DOM's RFP and the PSCPR. EDS argued that as a result of this alleged improper hiring of Wetherbee, Consultec had an illegal competitive advantage with respect to other potential bidders for the fiscal agent services contract.[7] On June 4, 2001, DOM and Consultec filed separate answers denying these allegations.

¶11. EDS amended its complaint several times. EDS's first amended complaint included an additional claim that Consultec provided a deceptively low bid and planned to "backload" the contract with exorbitantly priced future enhancements. EDS's second amended complaint expanded its theory of liability to include alleged tortious actions by Consultec involving "breach of duty" to EDS under the Ethics in Government Law, state procurement regulations, breach of duty of good faith, tortious interference with

---

[7]Prior to calling Helen Wetherbee as an adverse witness in its case-in-chief, EDS, through counsel, informed the chancellor that EDS would stipulate "that Helen Wetherbee other than accepting the employment both contingently and ultimately was wrong, and participating in the orals in the manner she did was wrong." Other than the alleged statutory and regulatory violations, EDS stipulated that Wetherbee "didn't do anything improper by helping Consultec" because EDS did not claim to have any evidence "that Consultec [ever] asked [Wetherbee] for inside information."

contract and prospective business relations and negligent or intentional misrepresentations. The third amended complaint added Lewis-Payton, in her official capacity as DOM Executive Director, as a party defendant. EDS also included a charge of breach of implied contract against DOM in awarding the contract to Consultec, which EDS claimed created a situation wherein Consultec became a non-responsive bidder.

¶12.  On July 13, 2001, Consultec moved for the issuance of a protective order precluding the disclosure of trade secrets and other confidential information which was not publicly available to EDS, its major competitor.  After issuing its original order which concluded that the confidential information would be provided, but only to EDS attorneys, the chancellor issued a modified protective order finding Consultec's pricing models to be sufficiently sensitive to the competitive business in which both Consultec and EDS engaged such that it was necessary to protect them from disclosure.

¶13.  On October 10, 2001, EDS filed a Petition for Cancellation of Fiscal Agent Contract before the PSCRB.  EDS made a presentation before the Board on October 11, 2001.  DOM and Consultec moved to stay the action in chancery court in light of EDS's attempt to obtain relief from the PSCRB, and EDS, therefore, withdrew its petition before the PSCRB.

¶14.  By joint stipulation filed October 23, 2001, the scope of litigation in chancery court was narrowed as EDS and Consultec dismissed all claims and counterclaims for damages without prejudice against each other, but EDS preserved its claim for injunctive relief. Basically, EDS requested the chancery court to afford injunctive relief by prohibiting Consultec from assuming its role as fiscal agent under the newly awarded contract, and to likewise find that Wetherbee had committed various ethical violations by being involved as an employee of Consultec concerning the successful bid for DOM fiscal agent after having been involved with the initial 1999 RFP process in her then official capacity as DOM Executive Director.

¶15. A chancery court hearing was commenced on October 31, 2001, on the motions for summary judgment filed by EDS, DOM and Consultec, as well as EDS's motion for injunctive relief and the motions to dismiss filed by DOM and Consultec. From the opening statements of all parties, there was an issue as to whether the chancellor should conduct the hearing as an administrative appeal pursuant to the applicable statutes; however, over the course of the two day hearing, the chancellor did receive extensive sworn testimony from various witnesses. In opening statements, counsel for EDS proceeded to address all issues raised in its original complaint and amended complaints.

¶16. During the questioning of Rica Lewis-Payton, DOM Executive Director, she testified that once she was informed of Helen Wetherbee's proposed participation as account manager for Consultec, she discussed the matter with DOM's attorney, Gwen Combs, who in turn discussed the matter with the Ethics Commission personnel. Combs stated the Ethics Commission could not provide a written opinion on prospective employment, but advised that based on the facts presented, there were no ethical violations.

¶17. On December 6, 2001, the chancellor issued an order and final judgment determining that the matters before the court were essentially appellate in nature; therefore, the case would be treated as an administrative appeal. After conducting an independent review of the record, the chancellor concluded that DOM's decision to award the fiscal agent contract to Consultec was based upon substantial evidence. The chancellor found the use of the same APD was not fatal error which would require finding the contract to be void. The chancellor also found the 1999 and 2000 RFPs to be separate and distinct.

¶18. The chancellor next determined EDS failed to meet its burden of proof as to its claim of a due process violation in that EDS failed to establish a property interest and EDS failed to show that property interest was deprived under color of state law. The chancellor also found DOM, the office of the Governor, the State of Mississippi and Rica Lewis-Payton, in her official capacity, to be immune from suit

8

because they were not "persons" subject to suit under 42 U.S.C. § 1983. The chancellor found that because there was no continuing violation of a federal law, EDS was not entitled to injunctive relief.

¶19. The chancellor also determined DOM made an informed decision, supported by substantial evidence, based on its best interpretation of the statutes. The chancellor found no evidence that DOM acted arbitrarily or capriciously in awarding the fiscal agent contract to Consultec.

¶20. The final issue before the chancellor was whether an injunction pending an appeal should be issued. The chancellor first determined EDS failed to establish that a substantial likelihood existed that EDS would prevail on the merits. The chancellor then determined EDS's argument that an injunction was necessary to prevent irreparable injury[8] lacked merit in light of the fact that EDS claimed to be entitled to monetary damages. The chancellor found that the balance of harms factor weighed in favor of DOM because the additional harm to the State if the contract was not implemented on time had to be considered as well as the unemployment of workers for both EDS and Consultec. Finally, the chancellor determined EDS failed to prove that the issuance of a preliminary injunction or injunction pending appeal would be consistent with the public interest. Based on all relevant factors, the chancellor denied EDS's motion for a preliminary injunction or injunction pending appeal.

¶21. On December 17, 2001, EDS timely perfected an appeal to this Court from the chancellor's adverse ruling. On December 18, 2001, EDS moved this Court for an injunction pending appeal pursuant to M.R.A.P. 8(c) to prevent Consultec's takeover of DOM's fiscal agent contract which was scheduled for January 1, 2002. On December 20, 2001, this Court, sitting in an emergency en banc session, entered

---

[8]"Irreparable damages" in the context of an injunction are defined as "damages for which no certain pecuniary standard exists for measurement." *Black's Law Dictionary* 391 (6th ed. 1990).

an order denying EDS's motion for an injunction pending appeal. Therefore, on January 1, 2002, Consultec assumed the duties and responsibilities as DOM's fiscal agent.

¶22.    In today's appeal, EDS raises the following six issues before this Court:

1. Whether the chancery court misapplied the standard of review in determining whether Division of Medicaid Executive Director Helen Wetherbee's involvement in DOM's 1999-2001 fiscal agent source solicitation and selection function ("Selection Process") disqualified Consultec, LLC and required DOM to award the fiscal agent contract to Electronic Data Systems Corporation.
2. Whether, as a matter of law, Wetherbee acted in Consultec's behalf in connection with or in relation to a decision she made, or a particular matter or proceeding in which she participated personally and substantially, as DOM's Executive Director.
3. Whether Consultec was a non-responsive offeror.
4. Whether EDS is entitled to the fiscal agent contract and/or damages as a result of DOM's having awarded the fiscal contract to a non-responsive offeror.
5. Whether the chancery court erred in dismissing EDS's 42 U.S.C. § 1983 claims.
6. Whether the chancery court erred in refusing to permit EDS discovery regarding the costs and profit margins of Consultec.

¶23.    DOM adds one additional issue in its Statement of Issues for this Court to consider:

7. Whether EDS failed to exhaust its remedies by timely prosecuting its appeal from the adverse decision of the Personal Service Contract Review Board.

¶24.    For sake of clarity, the issues identified by EDS and the DOM have been restated for purposes of this opinion:

    **I.**       **WHETHER THE CHANCERY COURT APPLIED AN IMPROPER STANDARD OF APPELLATE REVIEW IN THIS CASE.**

    **II.**      **WHETHER THE CHANCERY COURT ERRED IN UPHOLDING THE DEPARTMENT OF MEDICAID'S DECISION TO AWARD ITS FISCAL AGENT CONTRACT TO CONSULTEC.**

    **III.**     **WHETHER THE CHANCERY COURT ERRED IN REFUSING TO PERMIT EDS DISCOVERY REGARDING THE COSTS AND PROFIT MARGINS OF CONSULTEC.**

    **IV.**     **WHETHER EDS FAILED TO EXHAUST ITS REMEDIES BY TIMELY PROSECUTING ITS APPEAL FROM THE ADVERSE**

**DECISION OF THE PERSONAL SERVICE CONTRACT REVIEW BOARD.**

## DISCUSSION

### I.  WHETHER THE CHANCERY COURT APPLIED AN IMPROPER STANDARD OF APPELLATE REVIEW IN THIS CASE.

¶25.  EDS argues the chancery court applied an improper standard of review in this case. EDS asserts there was a legal question based on undisputed facts concerning Helen Wetherbee's involvement on both sides of the fiscal agent source solicitation and selection function. EDS now argues this Court must conduct a de novo review of whether DOM properly awarded its fiscal agent contract to Consultec, giving no deference to DOM, the Board or the chancery court. DOM argues the chancery court applied the correct standard of review to this appeal from an administrative agency.

¶26.  After conducting an independent review of the record, the chancellor determined the matters before the court were appellate in nature, and the cause of action would, therefore, be treated as an administrative appeal.  In her Order and Final Judgment of the Court, the chancellor stated, inter alia:

> This Court having heard testimony on these matters finds that the matters before this Court are essentially appellate in nature and therefore will be treated as an administrative appeal.
>
> ***************
> By joint stipulation filed October 23, 2001, the scope of the litigation was narrowed considerably.  Consultec and EDS dismissed all claims without prejudice as against each other.  The allegations once again constitute what essentially purports to be an appeal from the DOM's administrative agency decision awarding the contract to Consultec.

¶27.  As always, one of our first concerns in considering any case before us is the appropriate standard of review.  Here, we are confronted with a case wherein the learned chancellor received extensive sworn testimony over the course of a full two-day hearing and the record reveals the trial judge and the attorneys pushed long and hard to conclude the hearing within that two-day period.  Indeed, the record before us reveals a somewhat hybrid proceeding wherein the chancellor clearly considered the administrative record

11

and likewise received testimony and additional exhibits at the two-day hearing. At the commencement of the hearing, one of the attorneys for EDS stated in his opening statements to the trial court:

> We are here now this morning to deal with EDS's motion for preliminary injunction/summary judgment, and say from the outset, Judge, that the way we view this situation, the nature of the relief that we are requesting today and the nature of the arguments that will be presented to you will suggest the possibility of this being more in the nature of permanent relief than preliminary relief.

However, at the conclusion of the attorneys' opening statements to the court, yet another attorney for EDS stated:

> Yes. Your Honor, as a preliminary matter, [DOM attorney] and I have reached a stipulation that – and I think Consultec will probably agree with this too, that if the Court considers this an administrative appeal, then the record that was proffered by [DOM attorney] last week is the record upon which it will be considered. Now by so doing, we don't want – EDS does not waive its argument that that's not how this should be treated, but we have no objection to the admissibility of all that evidence no matter how the Court treats it.

¶28. EDS, through its chancery court pleadings, initially sought injunctive and declaratory relief, but, as already noted, numerous causes of action and claims for relief were subsequently added through the filing of amended complaints. On October 31, 2001, the learned chancellor was confronted with a not-uncommon occurrence for our trial judges, especially in emergency situations involving complex litigation with numerous issues – a good faith pre-hearing effort by the court and counsel to narrow the issues into a manageable format so that the court could fairly but efficiently deal with the relevant issues in the time allotted based on the hectic schedules of the court and counsel. We deduce from the record before us that at least one of the main reasons for the chancellor's receiving testimony was to develop the record on EDS's request for injunctive relief as well as the parties' motions and cross-motions for summary judgment. However, we again note that EDS had no objection to the administrative record being received into evidence at the chancery court hearing "if the [chancellor] considers this an administrative appeal," although

12

EDS did not waive its right to object to the chancellor's affording deferential appellate review by way of a decision based on the administrative record. We do note the record reveals that toward the end of the two-day chancery court hearing, DOM's attorney stated:

> Maybe I'm confused, but I thought we were here, while we have heard testimony on any number of issues, with regard to focusing on whether there is an ethics in government violation, and I fail to see how, while we've gotten off into future enhancements, how that is in any way relevant to the question that I understood we were here to address today, and that is, first, the question of whether there's an ethics in government violation for the purposes of preliminary injunctive relief and, secondly, whether if in fact those violations did not exist, whether the Court is going to take this under advisement pursuant to review of an agency action based on a differential standard.

EDS's response to this objection was that DOM and Consultec had through the testimony of their witnesses necessitated EDS's cross-examination of a Consultec witness on certain issues. DOM's attorney disagreed with EDS's explanation of the need to conduct cross-examination on certain issues, but in the end, the chancellor permitted EDS's cross-examination of a Consultec witness.

¶29.    We conclude from the entire record before us that while the chancellor allowed a record to be developed at the two-day hearing by way of the introduction of sworn testimony and exhibits since the hearing involved not only the appellate review of an administrative agency, but also numerous other issues, such as EDS's request for injunctive relief, the chancellor did not err in ultimately concluding that the matters before her were "essentially appellate in nature and therefore [would] be treated as an administrative appeal."

¶30.    The standard of review on a decision of an administrative agency by an appellate court is found in *Tillmon v. Miss. State Dep't of Health*, 749 So.2d 1017 (Miss. 1999):

> This court generally accords great deference to the agency's interpretation of its own rules and statutes which govern its operation. *Mississippi State Tax Comm'n v. Mask*, 667 So.2d 1313, 1314 (Miss. 1995). An appeal from an administrative agency is a limited one. *Mainstream Sav. & Loan Ass'n v. Washington Fed. Sav. & Loan Ass'n*,

325 So.2d 902, 903 (Miss. 1976). In reviewing decisions of administrative agencies, this court will entertain the appeal only to determine: whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. *Id.* at 903; *See also, Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211, 1215 (Miss. 1993).

*Tillmon*, 749 So. 2d at 1020-21. Review by the appellate court is limited to the record and to the agency's findings. *Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Sup'rs*, 621 So.2d 1211, 1216 (Miss. 1993). *See Miss. Employment Sec. Comm'n v. PDN, Inc.*, 586 So.2d 838, 840 (Miss. 1991); *Barnett v. Miss Employment Sec. Comm'n*, 583 So.2d 193, 195 (Miss. 1991); *Ray v. Bivens*, 562 So.2d 119, 121 (Miss. 1990). The appellate court may not reweigh the facts, nor may it substitute its judgment for that of the agency. *Chickasaw County Bd. of Sup'rs*, 621 So.2d at 1216. *See Miss. Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So.2d 778, 782 (Miss. 1992); *Miss. Pub. Serv. Comm'n v. Columbus & Greenville Ry.*, 573 So.2d 1343, 1346 (Miss. 1990); The lower tribunal is the trier of fact as well as the judge of the witnesses' credibility. *Nelson v. Miss. State Bd. of Veterinary Med.*, 662 So.2d 1058, 1062-63 (Miss. 1995).

This Court has held that "a holding which is supported by substantial evidence cannot be arbitrary and capricious." *McDerment [v. Mississippi Real Estate Comm'n]*, 748 So.2d at 119. Substantial evidence is defined as "evidence which is substantial, that is affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Delta CMI v. Speck*, 586 So.2d 768, 773 (Miss. 1991) (quoting *State Oil & Gas Bd. v. Mississippi Min. & Roy. Own. Ass'n*, 258 So.2d 767 (Miss. 1971)). Decisions which one could consider to be "fairly debatable" are not arbitrary or capricious. *City of Biloxi v. Hilbert*, 597 So.2d 1276, 1281 (Miss. 1992).

*Miss. Bureau of Narcotics v. Stacy*, 817 So.2d 523, 526-27 (Miss. 2002).

¶31. Because the chancery court appropriately found from the record before it that the case was an administrative appeal, the chancellor applied the correct standard of review in affirming the award of the

14

contract to Consultec, finding that DOM did not make its decision against the substantial weight of the evidence. However, this Court must now determine whether the chancellor properly affirmed the award of the contract to Consultec.

## II. WHETHER THE CHANCERY COURT ERRED IN UPHOLDING THE DIVISION OF MEDICAID'S DECISION TO AWARD ITS FISCAL AGENT CONTRACT TO CONSULTEC.

### A. Substantial Evidence

¶32. EDS argues Wetherbee acted as DOM's executive director and on Consultec's behalf within the same particular matter in accordance with 18 U.S.C. § 207(a)(1)[9] and 5 C.F.R. § 2637.201.[10] EDS also

---

[9]§ 207. Restrictions on former officers, employees, and elected officials of the executive and legislative branches
**(a) Restrictions on all officers and employees of the executive branch and certain other agencies.--**
**(1) Permanent restrictions on representation on particular matters.**--Any person who is an officer or employee (including any special Government employee) of the executive branch of the United States (including any independent agency of the United States), or of the District of Columbia, and who, after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter.

[10](a) Basic prohibition of 18 U.S.C. 207(a). No former Government employee, after terminating Government employment, shall knowingly act as agent or attorney for, or otherwise represent any other person in any formal or informal appearance before, or with the intent to influence, make any oral or written communication on behalf of any other person (1) to the United States, (2) in connection with any particular Government matter involving a specific party, (3) in which matter such employee participated personally and substantially as a Government employee. (b) Representation: Acting as agent or attorney, or other representative in an appearance, or communicating with intent to influence--
(3) Appearances; communications made with intent to influence. An appearance occurs when an individual is physically present before the United States in either a formal or informal setting or conveys material to the United States in connection with a formal proceeding or application.
(c) "Particular matter involving a specific party or parties"--

15

contends the 1999 and 2000 RFPs operated as a single decision to acquire services of a contractor. EDS further argues that DOM did not prepare an APD or an APD update for HCFA approval because there was no new or substantially changed project. EDS asserts because of these facts, Consultec was a non-responsive offeror causing the contract to be void.

¶33.   DOM argues this Court may not disturb the decision of the chancery court if it is valid and fairly debatable. DOM also contends substantial evidence supports the chancellor's determination that the 1999 and 2000 procurements were distinct and separate.

¶34.   The chancery court concluded that DOM's award of the fiscal agent contract to Consultec was supported by substantial evidence. The chancery court also determined the PSCRB thoroughly considered the ethical issues raised by EDS. In finding those issues were fairly debatable, the chancery court found the decision to award the contract to Consultec was not arbitrary or capricious.

¶35.   The chancery court found the use of the same APD was not a fatal error which would require the contract to be cancelled. Even though Wetherbee participated in the preparation of the 1999 APD and the subsequent issuance of the 1999 RFP, the chancellor could find no evidence that she either participated in the 2000 RFP or attempted to influence DOM employees regarding the 2000 RFP. The chancery court, therefore, determined the 1999 and 2000 RFPs to be separate and distinct.

¶36.   This Court accords great deference to an administrative agency's construction of its own rules and regulations and the statutes under which it operates. *Melody Manor Convalescent Ctr. v. Miss.*

---

(4) The same particular matter must be involved. The requirement of a "particular matter involving a specific party" applies both at the time that the Government employee acts in an official capacity and at the time in question after Government service. The same particular matter may continue in another form or in part. In determining whether two particular matters are the same, the agency should consider the extent to which the matters involve the same basic facts, related issues, the same or related parties, time elapsed, the same confidential information, and the continuing existence of an important Federal interest.

16

*State Dep't of Health*, 546 So.2d 972, 974 (Miss. 1989); *Grant Ctr. Hosp. v. Health Groups of Jackson Miss., Inc.*, 528 So.2d 804, 808 (Miss. 1988); *State Tax Comm'n v. Edmondson*, 196 So.2d 873 (Miss. 1967); *Winston County v. Woodruff*, 187 So.2d 299 (Miss. 1966). *See also Briscoe v. Buzbee*, 163 Miss. 574, 143 So. 407 (1932). The burden of proof rests with the party challenging the actions of an administrative agency. *Melody Manor Convalescent Ctr.*, 546 So.2d at 974.

> We have also held that we will not substitute our judgment for the judgment of an administrative agency when the action of the agency is not arbitrary or unreasonable, and when it is supported by substantial evidence. The only grounds for overturning administrative agency action by the appellate process is that the state agency has acted capriciously, unreasonably, arbitrarily; has abused its discretion or has violated a vested constitutional right of a party. *See State Board of Psychological Examiners v. Coxe*, 355 So.2d 669 (Miss. 1978); *Mainstream Savings and Loan Association v. Washington Federal Savings and Loan Association*, 325 So.2d 902 (Miss. 1976); *First National Bank of Vicksburg v. Martin*, 238 So.2d 856 (Miss. 1970); *Eidt v. City of Natchez*, 421 So.2d 1225 (Miss. 1982); *City of Meridian v. Hill*, 447 So.2d 641 (Miss. 1984).

*Melody Manor Convalescent Ctr.*, 546 So.2d at 974. In *Dep't of Health v. S.W. Miss. Reg'l Med. Ctr.*, 580 So.2d 1238 (Miss. 1991), this Court stated:

> An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,--absolute in power, tyrannical, despotic, non-rational,--implying either a lack of understanding of or a disregard for the fundamental nature of things.... An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.

*Id.* at 1240 (quoting *In re Housing Auth. of City of Salisbury*, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952)). *See also Melody Manor Convalescent Ctr.*, 546 So.2d at 974; *Miss. State Tax Comm'n v. Dyer Inv. Co.,* 507 So.2d 1287, 1289 (Miss. 1987); *State Bd. of Psychological Examiners v. Coxe*, 355 So.2d 669, 671 (Miss. 1978).

17

¶37. Miss. Code Ann. § 25-4-105 states in pertinent part:

> (2) No public servant shall be interested, directly or indirectly, during the term for which he shall have been chosen, or within one (1) year after the expiration of such term, in any contract with the state, or any district, county, city or town thereof, authorized by any law passed or order made by any board of which he may be or may have been a member.
> (3) No public servant shall:
> (e) Perform any service for any compensation for any person or business after termination of his office or employment in relation to any case, decision, proceeding or application with respect to which he was directly concerned or in which he personally participated during the period of his service or employment.

¶38. In ***Huey Stockstill, Inc. v. Hales***, 730 So. 2d 539 (Miss. 1998), an unsuccessful bidder appealed the decision of a County Board of Supervisors. The circuit court determined the Board of Supervisors took all steps necessary to avoid a possible conflict of interest by seeking the advice of the Ethics Commission. ***Id.*** at 545. The circuit court concluded there was substantial evidence in the record to support the actions of the Board, thus its actions were not arbitrary or capricious. ***Id.*** This Court, finding that the actions of the Board were not arbitrary or capricious, affirmed the judgment of the circuit court. ***Id.*** at 545-46.

¶39. Accordingly, we are of the firm opinion that the ethical issues raised regarding the award of the fiscal agent contract to Consultec were thoroughly reviewed by both the chancellor and the PSCRB. Those issues were certainly fairly debatable; therefore, DOM's decision to award the contract to Consultec was supported by substantial evidence and was not arbitrary or capricious.

### B. Violation of Constitutional Right

¶40. EDS argues the chancellor erred in dismissing its substantive due process claims pursuant to 42 U.S.C. § 1983.[11] Because EDS sought an injunction to prevent ongoing violations of federal law and

---

[11] 42 U.S.C. § 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

18

because DOM and Lewis-Payton allegedly failed to follow state and federal law, EDS claims DOM and Lewis-Payton are not immune from suit. EDS argues this federal violation stems from the reasonable expectation that DOM would conduct source selection processes fairly and in accordance with state and federal law. EDS contends these violations of essential standards of ethical conduct were under color of state law. Therefore, EDS argues it is entitled to § 1983 injunctive relief pursuant to federally created statutory rights.

¶41.    DOM argues EDS's substantive due process claim must fail because EDS has no identifiable property interest. DOM likewise asserts that EDS's argument regarding procedural regulations creating a property interest is without merit because property interests are a creature of the state. DOM also argues that DOM and Lewis-Payton are immune from suit in this case because neither DOM nor Lewis-Payton is considered a "person" under 42 U.S.C. § 1983. DOM likewise asserts that because EDS seeks no prospective injunctive relief based on a violation of federal law, EDS's substantive due process argument is without merit.

¶42.    The chancellor held EDS's constitutional claim failed because Consultec was not operating under color of state law; it was simply exercising its right as a private business. The chancellor also held EDS failed in proving that it had a property right in the future contract awarded to Consultec. The chancellor determined DOM, the office of the Governor, the State of Mississippi, and Lewis-Payton, in her official

---

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

capacity, were immune from the suit because suits against state agencies and their officers are suits against the state which are barred by the Eleventh Amendment to the U.S. Constitution. The chancellor also found that DOM, the office of the Governor, the State of Mississippi and Lewis-Payton, in her official capacity, were not "persons" for the purposes of 42 U.S.C. § 1983. The chancellor found that because DOM was not engaged in any continuing violation of federal law, EDS was not entitled to prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

¶43.     In *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989), the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *See also Lofton v. United States*, 785 So. 2d 287, 290 (Miss. 2001); *Wright v. White*, 693 So. 2d 898, 904-05 (Miss. 1997); *Lawson v. State*, 784 So. 2d 983, 984 (Miss. Ct. App. 2001). However, if a state official was sued in his or her official capacity for declaratory or injunctive relief, that official would be considered a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (citations omitted).

¶44.     The United States Supreme Court has established two requirements for a section 1983 cause of action for a due process violation. First, there must be a recognized liberty or property interest within the purview of the Fourteenth Amendment. *Bd. of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706. 33 L.Ed.2d 548 (1972). Second, a violation of the underlying constitutional right under color of state law must be proven. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 88 L.Ed.2d 662 (1986). *See also Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).

¶45.     In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a former police officer brought action against the city, city manager and chief of police contending that his due process

rights were violated when he was discharged from his job. The officer, who "held his position at the will and pleasure of the city," argued that his permanent classification gave him a "sufficient expectancy of continued employment to constitute a protected property interest." *Id.* at 344-45. The Supreme Court found that the officer was not deprived of a property interest protected by the Fourteenth Amendment upon his discharge. *Id.* at 347.

> In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Id.* at 350.

¶46.    In *Bd. of Regents v. Roth*, the Supreme Court held that an untenured state teacher did not have a protected interest or the right to a hearing prior to the non-renewal of his contract.  The Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. Similarly, EDS has no protected interest in the renewal or award of DOM's fiscal agent contract. Because EDS has failed to fulfill the first requirement of proving a section 1983 cause of action, this Court need not address the alleged violation of such a property right.

¶47.    We find that the chancellor correctly determined EDS failed to sufficiently prove it had a property interest in DOM's awarding of the fiscal agent contract. The unilateral expectation of the contract is not sufficient to fulfill the section 1983 requirement. Therefore, we further find that there was no constitutional violation in DOM's award of  the fiscal agent contract to Consultec.

*C. Preliminary Injunction*

¶48. EDS claims this issue of preliminary injunctive relief is moot. EDS contends the only remaining question regarding an injunction is whether the chancellor should grant a permanent injunction to rescind DOM's contract with Consultec. DOM argues that because this decision was one well within the chancellor's discretion, the chancellor correctly denied EDS's motion for preliminary injunctive relief. DOM also argues EDS should have sought a motion to stay instead of filing for preliminary injunctive relief.

¶49. In reviewing the issue of the preliminary injunction, the chancellor correctly applied the four-prong test: (1) whether there exists a substantial likelihood that plaintiff will prevail on the merits; (2) the injunction is necessary to prevent irreparable injury; (3) threatened injury to the plaintiffs outweighs the harm an injunction might do to the defendants; and (4) entry of a preliminary injunction is consistent with the public interest. *City of Durant v. Humphreys County Mem'l Hosp./Extended Care Facility*, 587 So.2d 244, 250 (Miss. 1991). After weighing each factor, the chancellor denied EDS's motion.

¶50. While we find from the record that the chancellor appropriately reviewed this issue before this case was appealed and did not abuse her discretion in denying EDS's motion for preliminary injunctive relief, we also agree that EDS is correct in its assertion that the issue of a preliminary injunction is moot.

### III. WHETHER THE CHANCERY COURT ERRED IN REFUSING TO PERMIT EDS DISCOVERY REGARDING THE COSTS AND PROFIT MARGINS OF CONSULTEC.

¶51. On July 13, 2001, Consultec filed a motion for a protective order to prevent the disclosure of certain documents submitted by Consultec in response to a request for a proposal issued by DOM for its fiscal agent contract. On July 25, 2001, EDS filed a motion to compel after Consultec refused to respond to certain questions propounded to Consultec during discovery. In its requests for production, EDS requested documents pertaining to Consultec's strategy for the preparation and calculation of the pricing component, formulation of its technical component, and presentation of its bid; selection of Consultec's key

staff members; and all aspects of Consultec's implementation of the Health Insurance Portability and Accountability Act (HIPAA) portion of the State Medicaid Administration Contract. EDS also requested each of Consultec's bid proposals submitted in response to DOM's 1999 and 2000 RFPs. Consultec opposed production of all of these documents citing certain trade secrets and confidential information. Consultec moved the chancery court to enter a protective order to prevent Consultec from being required to disclose any confidential information to EDS.

¶52. Although much of the information requested was proprietary and confidential in nature, the chancellor granted EDS's motion to compel in part subject to limitations and restrictions outlined in the protective order which was issued on August 16, 2001. The chancellor found the HIPAA issue to be outside the scope of the pleadings. The chancellor also found the question regarding EDS employees who had contacted Consultec about future employment to be irrelevant and outside the scope of discovery. Following Miss. R. Civ. P. 26(d)(7) which provides that trade secrets may be disclosed in a designated way, the chancellor granted Consultec's motion for a protective order to the extent that confidential information was only to be released to "EDS attorneys and not officers, directors or agents of EDS, only to the extent necessary to litigate this matter...."

¶53. On September 4, 2001, Consultec filed a motion to modify and clarify the chancellor's previous protective order. Consultec first sought clarification of the chancellor's intentions regarding disclosure of confidential documents and testimony to in-house EDS attorneys. Consultec moved that the disclosed confidential documents be restricted to outside counsel and consultants retained by outside counsel in regards to this litigation. Consultec also asked that the chancellor revisit the issue of the discoverability of Consultec's pricing models used in the calculation of its pricing components for the 1999 and 2000 bids.

23

Consultec argued disclosure of this information to EDS would be detrimental to Consultec as EDS is Consultec's primary competitor.

¶54.    On September 14, 2001, the chancellor issued an order granting Consultec's motion. The chancellor made clear that any person, in-house counsel or not, who was an officer, director or agent of EDS, would be precluded from access to any information obtained during the course of this litigation which was classified as confidential.   The chancellor also determined Consultec provided sufficient evidence to justify preventing disclosure of the pricing models at issue.  The chancellor stated:

> This court therefore finds that EDS has failed to establish a basis with which this court should require Consultec to divulge its pricing plans. To require the release of confidential information solely on the basis of alleged fraudulent activity without anything [sic] specific facts to support the charges is inappropriate. To do so would establish that entities who merely make allegations of fraudulent conduct against a company without any specific facts to support such an allegation would be able to obtain the confidential proprietary information from the accused party.

¶55.    EDS now argues the chancellor improperly refused EDS any discovery regarding Consultec's bids on the fiscal agent contract. EDS contends that in its second amended complaint, it asserted that Consultec fraudulently underbid the contract and, therefore, tortiously interfered with EDS's contractual and prospective business relations with DOM. EDS also argues that the information sought would prove a fact of consequence to the pleaded claims; therefore, the information is relevant. EDS does not disagree that the information sought is confidential; however, EDS contends confidentiality does not render documents immune from discovery.

24

¶56.    DOM argues EDS neither pled fraud with particularity as is required by Miss. R. Civ. P. 9(b),[12]

nor did EDS offer any proof which could be said to meet the clear and convincing standard of proof to

establish fraud.[13]   Therefore, according to DOM, EDS is not justified in its "invasive discovery request."

DOM argues Consultec has already produced thousands of pages of confidential documents pursuant to

the chancellor's protective order.  The only documents which have been withheld are Consultec's pricing

models which contain the most confidential information used by Consultec in preparing its bids.  DOM

argues there was substantial evidence to support the chancellor's decision to exclude the pricing models

from discovery.

¶57.    In regard to matters relating to discovery, the chancellor has considerable discretion. This Court

will not disturb discovery orders unless there has been an abuse of discretion.  *See **Ill. Cent. R.R. v.***

***Winters***, 815 So.2d 1168, 1172 (Miss. 2002); ***Dawkins v. Redd Pest Control, Inc.***, 607 So.2d

1232, 1235 (Miss. 1992).

> The trial court's grant or denial of a motion to compel is subject to an abuse of discretion
> standard of review on appeal. ***Taylor Machine Works, Inc. v. Great American***
> ***Surplus Lines Ins. Co.***, 635 So.2d 1357, 1363 (Miss.1994). "Where, however,
> limitations on discovery are improvidently ordered or allowed and important information
> is denied a litigant reversal will obtain." ***Dawkins v. Redd Pest Control Co., Inc.***, 607
> So.2d 1232, 1235 (Miss. 1992). In ***Dawkins***, guidelines were enumerated for
> determining whether there was an abuse of discretion:
>> [A] trial court's discretion in the discovery area is generally guided by the
>> principles that (a) the court follow the general policy that discovery be
>> encouraged, (b) limitations on discovery should be respected but not

---

[12]        **(b) Fraud, Mistake, Condition of the Mind.** In all averments of
fraud or mistake the circumstances constituting fraud or mistake shall be
stated with particularity. Malice, intent, knowledge, and other conditions
of mind of a person may be averred generally.

[13]*See **Martin v. Winfield**, 455 So.2d 762, 764 (Miss. 1984) (citing **Cotton v. McConnell**, 435
So.2d 683, 685-89 (Miss. 1983); **Franklin v. Lovitt Equipment Co.,** 420 So.2d 1370, 1373 (Miss.
1982)) ("Proving fraud is difficult, as it ought to be. Clear and convincing evidence is required.").

extended, (c) while the exercise of discretion depends on the parties' factual showings disputed facts should be construed in favor [of] discovery, and (d) while the importance of the information must be weighed against the hardships and cost of production and its availability through other means, it is preferable for the court to impose partial limitations on discovery rather than an outright denial. Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.

*Id.* at 1236 (quoting 23 Am.Jur.2d, Depositions and Discovery § 5 (1983)).

***Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.***, 725 So.2d 902, 919 (Miss. 1998).

¶58. Miss. R. Civ. P. 26 states in pertinent part:

**b) Scope of Discovery.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. The discovery may include the existence, description, nature, custody, condition and location of any books, documents, or other tangible things; and the identity and location of persons (i) having knowledge of any discoverable matter or (ii) who may be called as witnesses at the trial. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

**(d) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending, or in the case of a deposition the court that issued a subpoena therefor, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(7) that a trade secret or other confidential research, development, or commercial information not be disclosed *or be disclosed only in a designated way....*

(emphasis added). A trade secret is defined by Miss. Code Ann. § 75-26-3(d) (Rev. 2000) as:

information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

¶59.    The chancellor in her protective order found that although most documents requested by EDS were confidential and proprietary in nature, nonetheless, EDS's attorneys would have access to all requested documents except Consultec's pricing models. Consultec had stated that the documents produced were the bases for its bid, and aside from the pricing models being extremely confidential, especially to EDS, Consultec's biggest competitor, the pricing models were cumulative to the other documents produced.

¶60.    Because EDS failed to base its allegations of fraud on any specific facts, we find that the chancellor did not abuse her discretion in refusing to allow EDS access to the highly confidential pricing models of Consultec.

**IV.    WHETHER EDS FAILED TO EXHAUST ITS REMEDIES BY TIMELY PROSECUTING ITS APPEAL FROM THE ADVERSE DECISION OF THE PERSONAL SERVICE CONTRACT REVIEW BOARD.**

¶61.    On October 10, 2001, during the pendency of the chancery court litigation, EDS asked the Board to cancel DOM's contract with Consultec. EDS abandoned this administrative review on October 23, 2001. On October 26, 2001, DOM filed a motion to dismiss the action for lack of subject matter jurisdiction. On October 30, 2001, the chancellor denied DOM's motion to dismiss.

¶62.    DOM claims EDS brought suit against DOM instead of perfecting an administrative appeal from an adverse decision of the Board. DOM further argues that because EDS failed to exhaust all of its administrative remedies, the chancery court lacked subject matter jurisdiction to review these matters.

¶63.    EDS argues it filed a petition before the Board to review issues DOM failed to raise at the March 2001 meeting. EDS claims the petition was filed before the chancery court hearing so that the Board could have a second opportunity to correct its earlier mistake. EDS withdrew the petition because it feared DOM and Consultec would use the pending petition before the Board as a tactic to further avoid judicial scrutiny.

27

¶64. This Court has held that when there is not a "statutory plan for appeal from a state board or agency's decision and the aggrieved party does not have an adequate remedy at law, jurisdiction to review of [sic] the board or agency's decision lies with the chancery court." ***Pub. Employees' Ret. Sys. v. Langham***, 812 So.2d 969, 972 (Miss. 2002) (citing ***Prisock v. Perkins***, 735 So.2d 440, 443 (Miss. 1999); ***Charter Med. Corp. v. Miss. Health Planning & Dev. Agency***, 362 So.2d 180, 181 (Miss. 1978)).

> In ***Charter Medical Corp. v. Mississippi Health Planning & Dev. Agency***, 362 So.2d 180, 181 (Miss. 1978), we stated that where there is no statutory scheme for appeal from a decision of a state board or agency and the injured party does not have a full, plain, complete and adequate remedy at law, the chancery court has jurisdiction for judicial review of the board or agency decision. Here there is no statutory scheme for appealing the school board's decision awarding a hunting and fishing lease, and Prisock lacks a complete and adequate remedy at law. Therefore, the chancery court would have jurisdiction of an original action for injunction to judicially review the school board's decision.

***Prisock***, 735 So.2d at 443.

¶65. Section 6-201 of the Personal Service Contract Review Board Regulations states, "[a]ny person receiving an adverse decision, the state, or both may appeal from a decision of the Personal Service Contract Review Board to the designated court or courts of the state."

¶66. This matter was properly brought first before the PSCRB. After receiving an adverse ruling, EDS filed an appeal with the Chancery Court of Hinds County. Finding the chancery court had jurisdiction over this matter, we find this issue to be without merit.

## CONCLUSION

¶67. Applying the correct standard of review on a decision from an administrative agency, the chancellor properly found that DOM's award of its fiscal agent contract to Consultec was supported by substantial evidence and was not arbitrary or capricious. Because EDS did not have a property interest in the contract,

28

there was no constitutional violation. The chancellor was also correct in refusing to permit EDS, Consultec's primary competitor, discovery regarding the pricing models of Consultec.

¶68. Accordingly, the final judgment of the Chancery Court of the First Judicial District of Hinds County is affirmed.

¶69. **AFFIRMED.**

**SMITH, P.J., EASLEY AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. PITTMAN, C.J., WALLER, COBB AND DIAZ, JJ., NOT PARTICIPATING.**