# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CC-01109-SCT

*LEONARD HAYES*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2006 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 07/19/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     This appeal evolved from a benefit dispute between Leonard Hayes, a former firefighter for the City of Jackson and the Public Employees' Retirement System (*hereinafter* PERS).  Finding the decision of PERS to be supported by the evidence, we hereby affirm the determination that under Miss. Code Ann. § 25-11-139 (Rev. 2006), Hayes was not eligible for benefits until he had effectively resigned from his position on January 30, 2001.

## FACTS

¶2.     Hayes suffered several strokes that rendered him unfit to perform as a firefighter with the City of Jackson.  Although he was declared eligible for disability retirement benefits by

PERS on January 30, 2001, Hayes felt that he actually qualified on September 21, 1999, and was thus owed an additional sixteen months of back benefits. Several key dates were noted by the parties:

**August 15, 1999:** Hayes's last paycheck for services was received.

**September 20, 1999:** Hayes's application for disability retirement was filed, the date of termination listed as "pending."

**September 21, 1999:** A document entitled "Employer Certification of Termination and Unused Leave" was certified by a City employee. The "Date of termination" section was blank.

**February and March of 2000:** Two more paychecks were received; composed of leave donated by other city workers.

**February 12, 2001**: The city sent PERS a letter with the effective termination date certified as **January 30, 2001**. A signed letter of resignation from Hayes was attached, indicating he was resigning from his firefighter position as of that date.

**February 1, 2001:** Disability retirement benefits were made available, as per disability officer's interpretation of Miss. Code Ann. § 25-11-139 (Rev. 2006).

¶3.     A hearing was conducted by the PERS Board of Trustees Claim Committee on April 7, 2004. During this hearing, Donna Edwards, the Deputy Director of Special Programs, testified that to be eligible for disability retirement benefits under the statute, actual termination of employment must occur. She stated that PERS could not begin making disability retirement payments until either Hayes submitted a letter of resignation or the City gave Hayes notice of termination. In her opinion, Hayes remained a full-time employee on extended unpaid medical leave until his resignation was certified on January 30, 2001.

2

¶4.    In support of this conclusion, Edwards stated that Hayes had been covered by the state's insurance from the time of his disability application in 1999 until his benefits began in 2001; such coverage is not an option for non-employees. Edwards said that according to the state insurance office, Hayes had been paying his state insurance premiums since his strokes. She also noted that Hayes had been given two months of donated leave, for which he received an extra quarter year of service credit.

¶5.    Michelle Day, Public Safety Administrator of the Board of the Circuit Clerk, was the next witness at the hearing. She testified that Hayes's position was not filled prior to his resignation, and that his job duties were covered by a rotation of other firemen. Although Day first stated that Hayes was guaranteed a job with the City upon his return, she later revealed that under City policy, he could not have returned to his former position as a firefighter without doctor certification. Non-employees, according to Day, are ineligible to receive donated leave pay as Hayes did in February and March of 2000. She additionally testified that if Hayes had been terminated in 1999, he would have been unable to continue his coverage under the state's insurance, and would have been covered by COBRA instead.

¶6.    When Hayes was questioned, he stated that he had not paid the state insurance premiums during the 1999-2001 period, and that he only wrote the letter of resignation so that they that they "could go ahead on and proceed with [his] benefits."

¶7.    Based upon the evidence presented, the PERS board concluded that Hayes's employment had not terminated until January 30, 2001, thus, he was not legally eligible for benefits until February 1, 2001. Hayes appealed to the Circuit Court, where the finding of

the PERS Board was affirmed on June 6, 2006. He filed his notice of appeal to this Court on June 23, 2006.

## DISCUSSION

¶8.    Miss. Code Ann. § 25-11-139 provides in pertinent part that:

> . . . . and no benefits shall be paid for any period prior to the first of the month following the receipt of such application for such benefits, but in no event prior to *termination of employment . . .*

(Emphasis added).

¶9.    In 2002, the Legislature amended the definition portion of the statute, Section 25-11-103(aa), to state that the term "withdrawal from service" was synonymous with "termination from service." Hayes argued that before this amendment, it was not clear that complete severance of the employment relationship was required. In the alternative, Hayes contended that his employment relationship was severed on September 21, 1999, when the City submitted a form to the agency indicating that he was being separated from service due to "Disability Retirement."

¶10.    This Court affords great deference to an agency's interpretation of statutes which govern its operation. *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (Miss. 2003). In reviewing administrative decisions, an appellate court will look only to determine whether the agency's determination: 1) was unsupported by substantial evidence, 2) was arbitrary and capricious, 3) was beyond the power of the administration to make, or 4) violated some constitutional right of the complaining party. *Mainstream Sav. & Loan Ass'n v. Washington Fed. Sav. & Loan Ass'n*, 325 So. 2d 902, 903 (Miss. 1976).

4

¶11. The PERS board determined that, under the plain meaning of the statute, actual termination is, and has always been, required in order to receive disability retirement benefits. It further found that Hayes's employment with the city was not severed until he resigned on January 30, 2001. This conclusion is strongly supported by the evidence.

¶12. Edwards testified that, from the system's inception, the disability program's interpretation of the statute has been to require a complete termination of employment before disability retirement benefits could be awarded. There was evidence showing that the City did not fill Hayes's position until his letter of resignation became effective on January 30, 2001. Prior to that, Hayes could have returned to work at any time if he could have found five doctors to sign off on his recovery. Hayes received donated leave pay in February and March of 2000, and accumulated an additional quarter-year of service credit for this time. Based upon the evidence presented, it was reasonable to conclude that Hayes's employment with the City was not severed until January 30, 2001, and thus he was not entitled to disability retirement benefits until February 1 of that year.

## CONCLUSION

¶13. For the reasons cited above, this Court finds that the decision of PERS was not arbitrary or capricious; to the contrary, it was fully supported by the evidence. Therefore, we hold that the finding of the board and the lower court should be affirmed.

¶14. **AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**

5